Filed 10/26/20  P. v. Roldan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ALEXIS ROLDAN,<br><br>        Defendant and Appellant. | C089480<br><br>(Super. Ct. No. STK-CR-FE-COD-2017-0008939) |

A jury found defendant Alexis Roldan guilty of second degree murder and found that he intentionally and personally used a firearm and caused great bodily injury during the murder.  He now contends the trial court abused its discretion in denying his motion to strike the firearm enhancement at sentencing.  Disagreeing, we affirm the judgment.

1

BACKGROUND

Ernest L. and his brother Michol L. were in a car stopped at a traffic light at a busy intersection in the late afternoon on July 5, 2017. Defendant ran up to the car window and fired multiple shots into the car. Ernest was shot multiple times, including once in the head, and died.

Defendant had met Ernest a few months earlier. He testified that in the recent past, Ernest had fired a gun at him while he was driving. Later, Ernest followed defendant in a car. After these incidents, defendant bought a gun to protect himself. When he saw Ernest on the night in question, they made eye contact. Defendant testified that he thought Ernest was reaching for a gun and that defendant was afraid. Although he testified that he shot at Ernest's car to frighten him, in a recorded phone call from the jail he said he shot Ernest because he was angry at Ernest and the men in the car were laughing at him; he added that Ernest should have stayed out of his way and minded his own business.

An information charged defendant with the first degree murder of Ernest (Pen. Code, § 187, subd. (a); count 1),[1] attempted first degree murder of Michol (§§ 664/187, subd. (a); count 2), and shooting at an inhabited vehicle (§ 246; count 3). The information also alleged intentional and personal discharge of a handgun causing death or great bodily injury (§ 12022.53, subd. (d); count 1), intentional and personal discharge of a handgun (§ 12022.53, subd. (c); count 2); and personal use of a firearm in the commission of a felony (§ 12022.5, subd. (a); counts 1 and 2).

The jury found defendant guilty of the second degree murder of Ernest and shooting at an inhabited vehicle. It failed to reach a verdict on the attempted murder

---

[1] Undesignated statutory references are to the Penal Code.

charge, and the court declared a mistrial and dismissed count 2. The jury found true both firearm enhancements as to count 1.

Prior to sentencing, defendant moved the trial court to exercise its discretion to strike the section 12022.53, subdivision (d) enhancement, and later also asked the court to "stay" both gun enhancements. Defendant, who was 19 years old at the time he committed the offense, submitted a psychological evaluation by Dr. Rokop, documents of familial and community support for defendant, and certificates of achievement for defendant, as part of a *Franklin* packet, to "make a record of information relevant to his eventual youth offender parole hearing." (*People v. Franklin* (2016) 63 Cal.4th 261, 284 (*Franklin*).) Defendant's family also made statements at the hearing as part of the *Franklin* packet.

At sentencing, the trial court heard victim impact statements and watched a video made by the victim's family, considered Dr. Rokop's report, reviewed and considered the probation report, and heard argument from the parties regarding striking the firearm enhancement under section 12022.53, subdivision (d). Defense counsel argued that based on the jury's verdict, there were issues regarding potential self-defense, albeit unreasonable. Counsel also pointed out that Dr. Rokop's report opined that defendant's youth contributed to his conduct and added that defendant did not have a prior criminal record. The People countered that defendant's actions endangered not only his ultimate victim but also Michol and the entire community; defendant had fired his gun nine times on a crowded street. The People argued that defendant had not demonstrated any remorse, and was a documented gang member with several disciplinary actions while in custody. The People also noted that Dr. Rokop's report was "not favorable to" defendant

and that the report indicated defendant was a moderate to high risk of future violence, among other things.**2**

The trial court characterized defendant's actions from the trial evidence as a "brazen act of violence committed in broad daylight" in the "middle of the day" on a "crowded street." The court noted defendant had given a statement indicating he had the firearm for self-defense, but had also stated he wanted revenge on Ernest. The court acknowledged the statements and pain of both families, and that defendant had no prior criminal history. It then considered the probation report and the listed factors in mitigation and aggravation. When considering the firearm enhancement, the court found the crime involved great violence, great bodily harm as well as the threat thereof, and a high degree of callousness, cruelty, and viciousness to both Ernest and Michol. The court noted that defendant was armed with a firearm he had previously purchased, although he claimed the purchase and arming was for protection. The court cited defendant's lack of a prior record as the sole factor in mitigation. Finding that the factors in aggravation outweighed the factors in mitigation, the court declined to exercise its discretion to strike the section 12022.53, subdivision (d) firearm enhancement under sections 12022.53, subdivision (h) and 1385.

The trial court sentenced defendant to a term of 15 years to life for the second degree murder of Ernest, with a consecutive term of 25 years to life on the firearm enhancement, for an aggregate term of 40 years to life in prison. The court stayed the

---

**2** Dr. Rokop's report was filed with this court under seal, together with letters and other items submitted for consideration by the trial court at sentencing and as the *Franklin* packet, as were unredacted copies of the parties' briefing on appeal that discuss Dr. Rokop's report in detail. No portion of the reporter's transcript is under seal; we reference the transcript as needed but do not reference the sealed report in any detail within this opinion, as details of its contents are not relevant to our determination of the issues on appeal.

4

remainder of the terms and noted that defendant would be eligible for a youthful offender parole hearing after serving 25 years of his sentence.[3]

## DISCUSSION

Defendant contends the trial court abused its discretion in declining to exercise its discretion to strike the section 12022.53, subsection (d) firearm enhancement. He argues in disjointed briefing presented under a single heading that the trial court "committed multiple abuses of its discretion under [sections] 12022.53[, subdivision] (h)/1385." His arguments include that the court adequately considered neither his youth nor the underlying purpose of Senate Bill No. 620, which conferred the discretion to strike firearm enhancements, and that the court misunderstood its "middle ground"(options. As we explain, we see no abuse of discretion.

### I

*Statutes and Standard of Review*

We begin with a brief outline of the relevant statutes and the standard of review.

Section 12022.53, subdivision (d) provides for an extra 25 years in prison for "personally and intentionally discharg[ing] a firearm and proximately caus[ing] great bodily injury . . . or death." Subdivision (h) grants a trial court the discretion to "strike or dismiss an enhancement" it was "otherwise required to . . . impose[ ]" "in the interest of justice pursuant to Section 1385." (*People v. Garcia* (2020) 46 Cal.App.5th 786, 790, review granted S261772, June 10, 2020.)

---

[3] The trial court imposed the upper term of 10 years in prison as to the section 12022.5, subdivision (a) enhancement, as well as the upper term of seven years on the section 246 conviction, but then ordered the terms "stricken" pursuant to section 654. The respective abstracts of judgment correctly characterize both terms as stayed, therefore we assume the use of "stricken" is merely a ministerial error and do not order correction. )

Section 12022.5, subdivision (a), provides in relevant part that "any person who personally uses a firearm in the commission of a felony . . . shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years."

The trial court's refusal to strike or dismiss an enhancement is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) In determining whether to exercise its discretion, the trial court is required to consider factors such as, "the rights of the defendant, the interests of society represented by the People, and individualized considerations pertaining to the defendant and his or her offenses and background." (*People v. Rocha* (2019) 32 Cal.App.5th 352, 359.) A " ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Carmony*. at p. 377.)

## II

### *Consideration of Youth*

Defendant relies on a number of cases from the United States Supreme Court as well as our high court to argue that the trial court was required to *specifically* consider defendant's youth, as well as the materials contained in the *Franklin* packet, when deciding whether to strike the firearm enhancement. He summarizes his argument by claiming that "specifically, the trial court did not (and could not) point to anything in appellant's character or background that could be considered substantial evidence of him [*sic*] being an 'incorrigible youth' under the *Miller*/*Montgomery*/ *Franklin* criteria. Because *no* substantial evidence of incorrigibility was before the court at sentencing, imposition of the draconian 25-year-to-life indeterminate term on top of the 15-year-to-life indeterminate term for murder was a manifest abuse of the court's discretion."

But defendant cites no authority for the argument that imposition of a 40 year sentence, much less a 25 year enhancement, for a crime committed by a 19-year-old requires a finding of incorrigibility. As we explain, it does not.

6

It is certainly true that the United States Supreme Court has held that the Eighth Amendment to the federal Constitution prohibits a mandatory life without parole (LWOP) sentence for a juvenile offender who commits homicide. (*Miller v. Alabama* (2012) 567 U.S. 460, 489.) Our Supreme Court has held in *People v. Caballero* (2012) 55 Cal.4th 262, that the prohibition on LWOP sentences for all juvenile nonhomicide offenders (established in *Graham v. Florida* (2010) 560 U.S. 48) applies to sentences that are the functional equivalent of LWOP, including Caballero's term of 110 years to life in that case. (*Caballero*, at p. 268.) In *Franklin, supra,* 63 Cal.4th at page 268, our Supreme Court found that the enactment of sections 3051 and 4801 brought California's juvenile sentencing in line with those authorities, by providing a juvenile offender the possibility of release after 25 years of imprisonment, and by requiring the Board of Parole Hearings to " 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity.' " (*Franklin,* at p. 268.) *Franklin* also required that youthful defendants be given an opportunity to create a record of those "youth-related factors, such as his cognitive ability, character, and social and family background at the time of the offense" for the parole board hearing. (*Id.* at p. 269.) Here, as in *Franklin*, defendant "is not subject to a sentence that presumes his incorrigibility; by operation of law, he is entitled to a parole hearing and possible release after 25 years of incarceration. . . . [Defendant] is not serving an LWOP sentence or its functional equivalent, so the constitutional requirements for properly evaluating a juvenile offender's incorrigibility ' "at the outset" ' do not apply here." (*Id.* at pp. 281-282.) Defendant's challenge based on a perceived failure to consider his youth fails.

### III

*Underlying Purpose of Amendments Conferring Discretion*

Defendant next argues that in its discussion of the severity of the crime, "the trial court was saying nothing more than that trial evidence supported the 'true' finding by the

jury on that enhancement, thereby authorizing the imposition of the 25-year-to-life enhancement. [¶] But that should *not* have been the end point of the trial court's analysis under sections 12022.53[, subdivision] (h) and 1385: Although *every* defendant for whom a jury has made a 'true' finding on any . . . allegation is legally 'deserving' of the statutory punishment mandated by that subdivision, the availability of the [Senate Bill No.] 620 ameliorative statutory relief . . . means that 'some defendants may also be deserving of a lesser punishment.' " Defendant thus argues the trial court misunderstood the underlying purpose of the statutory amendments, to provide shorter sentences for certain offenders.

As we have explained, the trial court considered everything offered to it and then determined that defendant here was *not* deserving of a lesser punishment. We do not see that the underlying purpose of Senate Bill No. 620 mandated a contrary result. As we have described, the court considered defendant's various expressions of his motivations for the shooting as well as the risk to the community posed by his actions, and weighed the aggravating against the mitigating factors with full consideration of the evidence contained in the *Franklin* packet.

That reasonable people might reach a different conclusion does not signal abuse of discretion or misunderstanding of the statutory amendments at issue. We see no error.

IV

*Misunderstanding of Middle Ground Options*

Defendant also contends the case should be remanded for resentencing because the trial court did not understand the full scope of its discretion regarding options beyond merely striking or declining to strike the section 12022.53, subdivision (d) enhancement. He argues that the court's discretion to strike or dismiss the firearm enhancement under section 1385 was not a "binary" or "all or nothing" choice, but rather allowed the court to impose a lesser enhancement. In particular, defendant argues that because he was charged with a section 12022.5, subdivision (a) enhancement, which was also found true

8

as to count 1, the court could have stricken the greater enhancement and imposed the 10 years for the section 12022.5, subdivision (a) enhancement instead. He adds that there were uncharged lessers as well, from which the court could choose.

We first note that the record does not reflect the trial court was *asked* to impose an unstayed sentence for the lesser enhancement in lieu of the greater. The court was asked to strike the greater enhancement, and, after giving a detailed statement of reasons, it declined to do so. The only reference to the lesser enhancement was when defense counsel asked the court to stay sentence on it, which the court did, in fact, do. Trial courts are presumed to be aware of their discretion, and defendant bears the burden of proving that the trial court was unaware of its options here. "[I]n light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) Defendant's arguments regarding the trial court's understanding of its discretion as it relates to the imposition of lesser enhancements in lieu of the greater enhancement fail.[4]

---

[4] Defendant describes at length the debate between intermediate appellate courts regarding whether the trial court has discretion to impose an *uncharged* lesser enhancement. (See *People v. Morrison* (2019) 34 Cal.App.5th 217 [holding that an uncharged lesser enhancement may be imposed]; *People v. Tirado* (2019) 38 Cal.App.5th 637, 642-644, review granted Nov. 13, 2019, S257658 [holding that the trial court is limited to imposing or striking the charged enhancement].) But defendant's sentencing hearing was held after *Morrison* was published and prior to the issuance of *Tirado*; further, here the court had an available *charged* lesser enhancement at its disposal, but did not substitute it for the greater enhancement. We assume it chose not to do so. As the *Morrison* court noted: "after the publication of our decision today, the usual presumption that a sentencing court correctly applied the law will apply and will ordinarily prevent remand where the record is silent as to the scope of a court's discretion." (*Morrison,* at p. 225.)

DISPOSITION

The judgment is affirmed.


_____/s/_____
Duarte, J.



We concur:



_____/s/_____
Mauro, Acting P. J.




_____/s/_____
Renner, J.

10