Filed 2/11/21  P. v. Hernandez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CESAR MOISES HERNANDEZ,<br><br>Defendant and Appellant. | B297619<br><br>Los Angeles County<br>Super. Ct. No. TA146758 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge. Affirmed with directions.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Cesar Moises Hernandez was convicted of murder and being a felon in possession of a firearm. He was sentenced to 80 years to life in state prison. On appeal, defendant contends that the trial court erred by denying his motion to quash a search warrant, the prosecutor committed misconduct during rebuttal argument, trial counsel was ineffective, and the matter should be remanded to allow the court to strike or dismiss the firearm and serious felony enhancements. We affirm.

## PROCEDURAL BACKGROUND

By amended information filed in March 2019, defendant was charged with first degree murder (Pen. Code,[1] § 187, subd. (a); count 1) and with being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 8).[2] The information alleged that defendant personally used and discharged a firearm which caused death (§ 12022.53, subds. (b), (c) & (d)). The information further alleged that defendant sustained one prior serious or violent felony (§ 667, subd. (a)(1)), which qualified as a strike within the meaning of the Three Strikes law (§§ 667, subds. (b)–(j), 1170.12). Defendant pled not guilty and denied the allegations.

In April 2019, the jury found defendant guilty of both counts and found the firearm enhancement allegation under section 12022.53, subdivision (d), true. In a bifurcated bench

---

[1] All undesignated statutory references are to the Penal Code.

[2] Counts 2 through 7 were subsequently dismissed.

proceeding, defendant admitted and the court found true the prior felony conviction allegation.

On May 6, 2019, the court sentenced defendant to state prison for a total of 80 years to life calculated as follows: as to count 1, 25 years to life, doubled to 50 years to life (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(d)), plus 25 years (§ 12022.53, subd. (d)), plus five years (§ 667, subd. (a)(1)); as to count 8, three years, doubled to six years (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(d)), which was stayed (§ 654).[3]

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND

### 1. The Shooting

On June 25, 2018, at approximately 1:35 a.m., William Baker was driving southbound on Long Beach Boulevard and observed two vehicles on the side of the road. The white car had minor damage on the front driver bumper area. As Baker began to slow down to pull over to the side of the road, he saw a man, who was standing next to a pickup truck, pull out a gun and shoot the driver of the truck. The shooter was a Hispanic man and he wore a white shirt. Baker, who had not fully stopped his car, began to drive away. From his rearview mirror, he observed the white car pull into traffic and make a U-turn on Long Beach Boulevard.

Around 1:50 a.m. on June 25, 2018, Deputy Sheriff Jesus Jimenes discovered the victim, Edgar Vasquez, slumped in the driver's seat of the truck. The truck was found about 100 yards

---

[3] In the disposition, we direct the court to correct the abstract of judgment to reflect its oral pronouncement of sentence.

3

from Las Carinosas Bar. The bar is located at 9925 Long Beach Boulevard in Lynwood. The rear window of the truck had been shattered and blood was running down Vasquez's face. Vasquez had been shot in the head and was dead.

## 2.    Events Before the Shooting

Defendant's girlfriend, Gabby, had worked at Las Carinosas Bar several nights a week. When she worked at the bar, defendant was also usually at the bar and would stay for several hours. Defendant drove a white Nissan when he came to the bar with Gabby.

Gabby had stopped working at the bar before the shooting. On the evening of the shooting, however, Gabby asked the bar's owner, Javier Mayer, if she could come back to work. Mayer said yes, but Gabby never returned to work.

There were several surveillance cameras throughout the interior of Las Carinosas Bar, as well as in the rear parking lot and the front street entrance. Video footage showed that on June 24, 2018, Gabby and defendant arrived at the bar around 10:00 p.m. Defendant drove a white compact car. At approximately 11:45 p.m., Vasquez arrived at the bar. He parked his truck in the rear parking lot. Vasquez did not interact with defendant or Gabby that evening.

At some point in the evening, between 11:45 p.m. and 1:15 a.m., defendant and Gabby got into a heated argument. At approximately 1:25 a.m., Gabby walked out the front of the bar and defendant followed her. Defendant moved his car, which was parked in front of the bar on Long Beach Boulevard, to the rear parking lot. A few seconds later, Gabby was seen running down an alley behind the bar. At approximately 1:29 a.m., minutes before the shooting, surveillance footage showed Gabby in front of

Salgado's Bakery, which was less than one block down the street from the bar.

Back at the bar, defendant appeared to be looking for Gabby. At one point, he knocked on the door of the women's restroom. When the security guard asked defendant what he was looking for, defendant said, "Fuck you." Defendant knocked on Mayer's office door and said goodbye. Defendant appeared pretty upset.

At approximately 1:35 a.m., Vasquez left the parking lot of the bar in his truck. A white Nissan followed his truck and sped out of the rear parking lot. Seconds later, Vasquez's truck and the white Nissan were captured driving on Long Beach Boulevard past the front entrance of Las Carinosas Bar. Within one block of the bar, the Nissan forced the truck to pull over in front of Salgado's Bakery.

The driver of the Nissan got out of the car and approached the driver's side of the truck. The shooting itself is not visible in the video footage. Shortly after the driver of the Nissan was by the truck, the truck began to roll forward. The driver of the Nissan returned to the car and drove away. The truck rolled forward until it came to a complete stop. The Nissan made a U-turn on Long Beach Boulevard.

Less than one minute lapsed from the time Vasquez drove away from the bar to when the shooting occurred. Vasquez was shot in front of Salgado's Bakery, which is located at 10007 Long Beach Boulevard.

3.    **Cell Phone Records**

Defendant's and Gabby's cell phone records were analyzed for the time period between 12:00 a.m. to 4:00 a.m. on June 25, 2018. Defendant's cell phone number on the day of the shooting

5

was 323-354-5249, and Gabby's cell phone number was 213-604-5505. From 1:28 a.m. (minutes after Gabby left the bar) to 1:34 a.m. (minutes before the shooting), defendant called Gabby 16 times. Defendant received a call from Gabby at 1:37 a.m., who was last seen on camera at Salgado's Bakery. This call was placed less than a minute after the shooting occurred.

### 4. Defendant's Arrest

The police ran defendant's name through departmental resources. They found a traffic citation that was issued to him in February 2018 in Pasadena. Defendant was driving a white Nissan Altima that was registered to Maria Elena Hernandez. Photographs of the Nissan captured by the police's automated license plate system confirmed that three months before Vasquez's murder, the car had damage to the front end as described by Baker. The day after the murder, defendant was involved in a traffic collision while driving a white Acura. The Acura was registered to defendant's sister.

On August 3, 2018, at approximately 2:05 p.m., defendant was arrested at 445 West Gage Avenue, Los Angeles (Gage residence). The police recovered a cell phone in defendant's pocket with the registered phone number of 323-354-5249. Under the contacts section of the phone, there was a contact for "Gabby Fea" and a phone number of 213-604-5505.

### 5. Post-Arrest Communications; Recovery of the Nissan

Lucero Mejia, defendant's cousin's fiancée, has known defendant for five years and has met Gabby. After defendant was arrested, she visited him in jail approximately once a week for two months. Defendant also frequently called Mejia while he was in jail. Mejia relayed messages from defendant's family to

defendant. Mejia also relayed messages from Gabby to defendant. Gabby lived in Tijuana, Mexico.

On September 21, 2018, the police were notified that a white Nissan was impounded in Tijuana. A pay stub bearing defendant's name was in the glove box. The car had the same distinct tires, door handles, window shape, and location of headlights as the car driven by the shooter as captured on surveillance footage. The car was transported to a tow yard in Compton, California. Paint chips from the white Nissan and Vasquez's truck were compared and analyzed. There was no chemical difference in six of the areas that were tested.

On September 28, 2018, Mejia visited defendant in jail and had a message to relay from Gabby that Mejia had written on a piece of paper. Gabby was sorry that the authorities had impounded the Nissan. Gabby felt it was because of her conversations with defendant that the authorities were able to find the car. Mejia told Gabby that defendant thought it was because Gabby and her son were driving the car around. Gabby said that she missed defendant but it was best if they did not talk to each other for about a month.

## DISCUSSION

### 1. Motion to Quash Search Warrant and Suppress Evidence

Defendant contends that the trial court erred in denying his motion to quash a search warrant and to suppress evidence seized from the Gage residence. Defendant also contends that counsel was ineffective by failing to challenge the warrantless search of the cell phone used by him on the day of the shooting, 323-354-5249, and by failing to challenge the warrantless

7

"pinging" over several days of calls from his current cell phone, 310-893-3465, to obtain his location and attempt to connect him to the Gage residence.[4]

### 1.1. Additional Facts

Before trial, defendant filed a motion to quash an August 3, 2018 search warrant and to suppress evidence seized from the Gage residence on that date (the motion). Defendant argued there was insufficient probable cause to believe he resided at or was connected to the Gage residence. The motion attached a copy of the search warrant and Detective Troy Ewing's affidavit in support of the warrant. Based on Ewing's affidavit, Judge Hayden Zacky had found probable cause for issuance of the search warrant and issued it at 9:05 a.m. on August 3, 2018.

In the statement of probable cause, Ewing recited the facts of the underlying murder and the results of the investigation. For example, on June 26, 2018, the day after the murder, defendant was involved in a traffic collision while driving the Acura, and defendant provided the responding officer with the phone number 323-354-5249. And in mid-July 2018, an anonymous source who knew defendant and Gabby's phone numbers contacted Ewing, providing 310-893-3465 as defendant's current cell phone number and 213-604-5505 as Gabby's cell phone number. Ewing stated that a search warrant was submitted to the relevant cellular providers of the two cell phone numbers and the companies provided the requested records.

---

[4] "Pinging" refers to the process of determining the location of a cell phone by tracking the signal sent by the phone to a cell phone tower.

Further, Ewing stated that on February 2, 2018, defendant was cited by the Pasadena Police Department while driving in a white Nissan Altima with front end damage. Ewing checked the Department's license plate reader system and observed the white Nissan parked in front of the Gage residence on several occasions. Ewing also indicated that detectives were actively pinging defendant's phone. On August 2, 2018, the pings showed that defendant's phone was at the Gage residence around 7:00 p.m. Detectives were in the area and observed the Acura arrive and park in the alley. The following morning, the vehicle was still parked in the alley.[5]

Ewing testified at the March 19, 2019 suppression hearing. He sought the issuance of the August 3, 2018 search warrant for the Gage residence based on, among other things, observing the Acura at the location, pings placing defendant's phone at the location, and photographs taken before the murder showing the Nissan parked at the location on several occasions.

Based on Ewing's affidavit, Judge Michael Schultz found there was insufficient probable cause to believe defendant resided in or was associated with the Gage residence. The court found, however, that based upon Ewing's testimony, which the court found to be "very credible," the good faith exception applied. The court noted additional facts that Ewing testified to that were not in his affidavit: Ewing was pinging defendant's phone in real time as defendant was driving towards the Gage residence and a man was observed getting out of the Acura and entering the Gage

---

[5] Pursuant to a search warrant issued on July 24, 2018, phone records for defendant's older cell phone number, 323-354-5249, and cellular site locations associated with that number, were obtained during the investigation.

residence. The court explained that these facts would have strengthened the conclusion that there was probable cause to believe defendant had a nexus to the Gage residence. The court ultimately found that because Ewing was very credible, that he testified that he made a mistake, and that based on what he did observe, he relied on the warrant in good faith. Thus, the court denied the motion. There was no discussion by the parties regarding any challenge to the searches of any of the phone numbers listed in the warrant.

### 1.2. The court did not err in denying the motion.

Defendant contends that the August 2018 search warrant is invalid because an objectively reasonable officer would not have believed that an affidavit "based on half truths and distorted facts and information already illegally obtained" established probable cause.

Absent probable cause, a search may nonetheless be valid under the good faith exception to the exclusionary rule. (*United States v. Leon* (1984) 468 U.S. 897, 906.) This exception provides that evidence obtained in violation of the Fourth Amendment need not be suppressed where the officer executing the warrant did so in objectively reasonable reliance on the warrant's authority. The test for determining whether the exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. (*Id.* at pp. 922–923, fn. 23.) In reviewing a trial court's denial of a motion to suppress evidence obtained pursuant to a warrant, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our

independent judgment." (*People v. Glasser* (1995) 11 Cal.4th 354, 362.)

Even if the August 2018 search warrant was not supported by probable cause, the good faith exception to the exclusionary rule applies. The main issue the court had with the search warrant, and what counsel argued, was that Ewing's affidavit, by itself, contained insufficient information connecting defendant to the Gage residence. The facts contained in the affidavit and provided by Ewing at the suppression hearing established, however, that defendant was connected to, or at least associated with, the Gage residence. Specifically, the day after the murder, defendant was in a traffic accident while driving the Acura; real time pinging of defendant's cell phone showed defendant was approaching the Gage residence; Ewing observed the Acura drive up to the Gage residence; the only person in the Acura was male; and the Acura was parked overnight at the Gage residence. Accordingly, the court did not err in denying the motion.

Defendant also challenges the validity of the August 2018 search warrant because the searches of the cell phones and related records listed in Ewing's affidavit were made without a search warrant. But the motion, the arguments at the suppression hearing, and Ewing's testimony, only pertained to and focused on whether there were sufficient facts linking defendant to the Gage residence. Defendant never argued below that the searches of his two cell phones and related records were invalid. Accordingly, this argument is forfeited. (See *People v. Williams* (1999) 20 Cal.4th 119, 130.)

In any event, this contention lacks merit. Ewing's affidavit in support of the August 2018 search warrant stated that he obtained the cell phone records for defendant's new phone

11

number (310-893-3465) and for Gabby's phone number (213-604-5505) pursuant to a search warrant. Ewing also obtained a search warrant for the records associated with defendant's old phone number (323-354-5249).[6]

## 2. Prosecutorial Misconduct

Defendant contends that the prosecutor improperly commented on the defense's failure to call Gabby as a trial witness, and referred to facts not in evidence by remarking that Gabby witnessed the shooting, during the prosecutor's rebuttal argument.

### 2.1. Relevant Background

During trial, the defense called two witnesses, Magdalena Lozano and Denora Virgen. They worked at Las Carinosas Bar on June 24, 2018. Lozano and Virgen testified that they did not see defendant and Vasquez have any contact with each other or argue with each other. They were the only witnesses called by the defense.

During his closing argument, defense counsel argued that Baker was the only eyewitness to the murder. Defense counsel emphasized that the "only direct evidence in this case of who did

---

[6] Anticipating forfeiture, defendant argues that counsel was ineffective in failing to challenge the warrantless searches for the phones listed in the August 2018 search warrant. For the reasons just stated, the searches of the phones and related records listed in the August 2018 search warrant were valid because they were conducted pursuant to other search warrants. Thus, there was nothing for counsel to have objected to.

12

the shooting is the testimony of Mr. Baker. Everything else is circumstantial."

In rebuttal, the prosecutor argued: "Now, the People have the burden to prove to you beyond a reasonable doubt that the defendant committed this crime. The defense does not have to ask one question. They do not have to call one witness. But they did. [¶] And the person they failed to call is someone who was an eyewitness to the murder, who is defendant's girlfriend. … [¶] Why not her? Why hasn't she reached out to law enforcement? Because she was an eyewitness to the murder that her boyfriend committed. That's why. She doesn't want to be found."

### 2.2. Analysis

As a preliminary matter, defendant forfeited his claim of prosecutorial misconduct by failing to object to the challenged statements during trial. To preserve such a claim for appeal, a defendant must make a timely and specific objection and request an admonition. (*People v. Clark* (2016) 63 Cal.4th 522, 577.) Otherwise, the argument is reviewable only if an objection would have been futile or an admonition would not have cured the harm caused by the misconduct. (*Ibid.*) In this case, defendant has not shown that an objection would have been futile or that an admonition would not have cured the alleged harm caused by the prosecutor's statements.

In any event, the California Supreme Court has stated that it is not improper for a prosecutor to make comments on the state of the evidence or on the failure of the defense to introduce material evidence or call logical witnesses. (*People v. Hughes* (2002) 27 Cal.4th 287, 372.) Here, Gabby was a logical witness because she was defendant's girlfriend, she was at the bar immediately before the murder where she and defendant got into

13

a heated argument, and she left the bar and was last seen in front of Salgado's Bakery minutes before the shooting. And from Salgado's Bakery, she could have witnessed the shooting. In addition, despite not answering several calls from defendant after they had just been in an argument, Gabby placed one call to defendant seconds after the shooting occurred. Further, in the months after defendant's arrest, she communicated with him concerning the impoundment of the Nissan in Mexico. We also note that when read in context, there is no indication of improper burden-shifting as defendant contends. The prosecutor began her argument by unequivocally telling the jury that the burden of proof was hers, and that the defense did not need to present any case.

We now turn to defendant's contention that his counsel was ineffective by failing to object to the prosecutor's statements that Gabby was an eyewitness to the shooting. To demonstrate that his right to effective assistance of counsel was violated, a defendant must show performance below an objective standard of reasonableness by his attorney, and prejudice sufficient to establish a reasonable probability he would have obtained a more favorable result in the absence of counsel's error. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 693–694.) A defendant whose counsel did not object to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's right to effective assistance of counsel, but the appellate record rarely demonstrates that the failure to object was the result of counsel's incompetence. (See *People v. Salcido* (2008) 44 Cal.4th 93, 152.) Where the record does not show the reasons for counsel's failure to object, the conviction must be

affirmed unless there could be no satisfactory explanation for the failure. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

Here, there was no evidence that Gabby saw defendant shoot Vasquez. But even if the prosecutor's comments about Gabby being an eyewitness to the shooting were improper, defendant has not established ineffective assistance. Defense counsel could have made a tactical decision not to object to the prosecutor's statements, believing an objection would have highlighted Gabby's proximity to the location of the shooting and her failure to contact law enforcement after defendant was arrested. Indeed, the facts adduced from trial indicate that she was very close to the location of the shooting. Gabby ran down the alley behind the bar and she ran along Long Beach Boulevard. She was also seen on surveillance footage in front of the bakery that was less than one block from the bar, and the cell phone records show that Gabby called defendant less than a minute after the shooting. In sum, defendant has not demonstrated that counsel's failure to object shows incompetence.

### 3.    Sentencing Enhancements

Finally, defendant contends that the matter must be remanded to allow the trial court to exercise its discretion to dismiss or strike the 25-year firearm enhancement and the five-year prior felony enhancement. We disagree.

Senate Bill Nos. 620 and 1393 both give trial courts discretion they previously did not have to impose more lenient sentences. Senate Bill No. 620, which went into effect on January 1, 2018, amended section 12022.53 (Stats. 2017, ch. 682, § 2) to allow the trial judge to strike or dismiss enhancements imposed pursuant to section 12022.53, subdivision (d). Similarly, Senate Bill No. 1393, which went into effect on January 1, 2019,

15

amended sections 667 and 1385 (Stats. 2018, ch. 1013, §§ 1, 2) to eliminate the statutory prohibition on a trial court's ability to strike a five-year enhancement imposed pursuant to section 667, subdivision (a)(1).

As defendant acknowledges, both Senate Bills 620 and 1393 were already in effect when he was sentenced on May 6, 2019. Accordingly, at the time of defendant's sentencing hearing, the court presumably was aware of its discretion to strike or dismiss the 25-year firearm enhancement and the five-year prior felony enhancement. In support of his position that the court was unaware of its discretion, defendant points to the court's silence on the record on this point. But the presumption that the court is aware of the governing law applies even on a silent record. (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["[I]n light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion."].)

We also reject defendant's contention that counsel was ineffective because he "had nothing to lose" by asking the court to exercise its discretion to strike the enhancements. Quite simply, the record is insufficiently developed to address this issue on direct appeal.

## DISPOSITION

The judgment is affirmed. Upon issuance of the remittitur, the court shall correct the abstract of judgment to reflect that defendant was sentenced to 50 years to life as a second-strike offender, plus 30 years for the enhancements, on count 1, and that the sentence for count 8 was stayed under section 654. The court shall send a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.

17