[No. F055925. Fifth Dist. May 28, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO GUTIERREZ, Defendant and Appellant.

---

---

**COUNSEL**

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brian Alvarez and Leslie W. Westmoreland, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**GOMES, J.**—A jury found Mario Gutierrez guilty of battery against a custodial officer at the Lerdo Detention Facility in Kern County. (Pen. Code, § 243.1; see Pen. Code, § 831, subd. (a).)[1] The trial court found four allegations of serious felony priors (§§ 667, subd. (a)(1), 1192.7, subd. (c)) true within the scope of the three strikes law (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(d)) and imposed a 25-year-to-life term to run consecutively to a term of 25 years to life plus one year already imposed in another case. On appeal, he argues an insufficiency of the evidence issue, two interrelated instructional issues, and a sentencing issue. We affirm the judgment.

## DISCUSSION

### 1. *Sufficiency of the Evidence*

Gutierrez argues that an insufficiency of the evidence of necessary, not excessive, force by the detention deputy is in the record. The Attorney General argues the contrary.

---

[1] Later statutory references are to the Penal Code except where otherwise noted.

Before discussing the law, we turn to the record. On the morning of March 22, 2007, Robin Norton, a detention deputy, used the public address system to tell Gutierrez his time in the recreation yard was up. After communicating by radio with Troy Kresha, a detention deputy on the other end of the sally port, Norton opened the door on her side of the sally port and followed Gutierrez toward the door on the other side of the sally port. As ordered, Gutierrez walked with his hands behind his back.

Kresha opened the door on his side of the sally port to let Gutierrez go back to his cell. As he walked out of the sally port, Gutierrez turned in the wrong direction. In a conversational tone, Kresha told him he needed to go back to his cell. Gutierrez stopped, raised both fists into the air, and said, "No." He bolted and ran, not toward his cell, but toward the receiving area.

Kresha's job was to secure inmates, so he followed Gutierrez and told him to stop and put his hands behind his back. Disobeying him, Gutierrez pushed on the receiving door leading to the garage, trying to get out. Had Gutierrez been there at the right time, he probably could have caught an officer going through there. That was a security issue. From a distance of three to four feet, Kresha fired a couple of two-second bursts of pepper spray.

Gutierrez turned on Kresha, throwing punches with both fists. Kresha started backpedaling. He fired another burst of pepper spray. Gutierrez kept advancing on him and kept throwing punches at him. Kresha kept backpedaling until he hit the end of the hallway where a door opens to a wider hallway leading into the receiving area. For officer safety, he felt his duty was to "stand there and defend that area" as the "last defense" to keep Gutierrez away from scissors and other items he could use as weapons.

Gutierrez kept advancing on Kresha, who fired another burst of pepper spray, again with no effect. Dropping the pepper spray from his right hand and the keys from his left hand, Kresha started throwing punches back. Neither he nor Gutierrez made contact with each other until a punch from Gutierrez broke Kresha's nose. He had blood in his eyes, could not see, and backed up again, just as other officers arrived. Apart from the effect, if any, of the pepper spray, he caused Gutierrez no physical harm.

Gutierrez argues that he did nothing more than push ineffectually on a locked door Kresha knew could not be opened, that he could not gain access to any other portion of the jail without coming back the way he came, and that Kresha used pepper spray before Gutierrez threatened or assaulted him. He argues, too, that other officers were close enough to arrive within

moments to assist in gaining his compliance and that Kresha did not give him sufficient time to obey the order to stop and put his hands behind his back.

Our duty on a challenge to the sufficiency of the evidence is to review the whole record in the light most favorable to the judgment for substantial evidence—credible and reasonable evidence of solid value—that could have enabled any rational trier of fact to have found the defendant guilty beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Prince* (2007) 40 Cal.4th 1179, 1251 [57 Cal.Rptr.3d 543, 156 P.3d 1015].) In doing so, we presume in support of the judgment the existence of every fact a reasonable trier of fact could reasonably deduce from the evidence. (*Prince, supra*, 40 Cal.4th at p. 1251.) The same standard of review applies to circumstantial evidence and direct evidence alike. (*Ibid.*)

From the evidence in the record, a reasonable trier of fact could reasonably infer that Kresha used necessary, not excessive, force to discharge his duty to secure inmates. Likewise, a reasonable trier of fact could reasonably make inferences contrary to all of those Gutierrez argues. Before a reviewing court can reverse the judgment for insufficiency of the evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) That is not the state of the record here. Gutierrez's insufficiency of the evidence argument simply asks us to reweigh the facts. (*People v. Bolin* (1998) 18 Cal.4th 297, 331–333 [75 Cal.Rptr.2d 412, 956 P.2d 374].) That we cannot do.

### 2. *Instructional Issues*

Gutierrez argues that the trial court not only denied him his due process and jury trial rights by failing to instruct sua sponte on self-defense but also impermissibly lightened the burden of proof by giving CALCRIM No. 2671, which he says improperly implies that a person generally cannot use any force in response to an officer's use of excessive force. The Attorney General argues that Gutierrez forfeited his right to appellate review of both the self-defense issue (by failing to request a self-defense instruction) and the CALCRIM No. 2671 issue (by failing to object to the instruction), that the trial court had no sua sponte duty to give a self-defense instruction, that CALCRIM No. 2671 correctly states the law, and that error, if any, was harmless.

Preliminarily, we address the Attorney General's forfeiture arguments. As a general rule, an appellate court can reach a question a party has not preserved for review if the issue involves neither the admission nor the exclusion of evidence. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429], citing Evid. Code, §§ 353, 354.) Assuming arguendo that Gutierrez failed to preserve his right to appellate review of his instructional issues, neither of which involves the admission or the exclusion of evidence, we choose to exercise our discretion to address both. (See *Canaan v. Abdelnour* (1985) 40 Cal.3d 703, 722, fn. 17 [221 Cal.Rptr. 468, 710 P.2d 268], overruled on another ground in *Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 183 [126 Cal.Rptr.2d 727, 56 P.3d 1029].)

At the instruction-settling conference, the trial court and counsel discussed paragraph 4 of CALCRIM No. 946 ("The defendant did not act in self-defense."). The trial court observed, "I didn't see any self-defense in issue," adding that Gutierrez's trial attorney could "surely argue the pepper spray might have incapacitated him. But I don't know that would be self-defense. So—," to which she interjected, "Which language are we taking out?" The trial court replied, "Well, I'm looking at 946 and I am trying to—what they have to prove. Where it said that you have to prove the defendant did not act in self-defense, what is your suggestion? What can we put in to cover this pepper spray?" The prosecutor said, "I can't—well, you have to give instruction 2671, which would be unreasonable force because—," at which point the trial court inquired, "Don't we have that in here?" The prosecutor replied, "Don't know if I added that one because I didn't—," at which point the trial court said, "All right. Well, let's stay with what we have got. 946, I will give that. I will not give [paragraph] four [on] self-defense because I don't think that's an issue. And then we will pick it up on that other instruction, I do think it is in here."

Later in the instruction-settling conference, the trial court said that CALCRIM No. 946 would inform the jury a custodial officer who is using "unreasonable or excessive force" is not lawfully performing his duties and that CALCRIM No. 2671 would "tie in the pepper spray and all the facts." On the request of Gutierrez's trial attorney, and with the prosecutor's concurrence, the trial court agreed to give CALCRIM No. 2671 "right after 946." After argument to the jury, the trial court so instructed as follows:

"The defendant is charged in Count 1 with battery against a custodial officer in violation of Penal Code section 243.1.

"To prove that the defendant is guilty of this crime, the People must prove that: Officer Kresha was a custodial officer performing the duties of a custodial officer; the defendant willfully and unlawfully touched Officer Kresha in a harmful or offensive manner; and three, when the defendant acted, he knew, or reasonably should have known, that Officer Kresha was a custodial officer who was performing his duties.

"Someone commits an act willfully when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else or gain any advantage.

"The slightest touching can be enough to commit a battery if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind.

"A custodial officer is someone who works for a law enforcement agency of the city or county and is responsible for maintaining custody of prisoners and helps operate a local detention facility.

"The Lerdo facility is a local detention facility.

"A custodial officer is not lawfully performing his duties if he is using unreasonable or excessive force in his or her duties. Instruction 2671, which follows, will define reasonable and unreasonable force.

"The People have—this is the People have the burden of proving beyond a reasonable doubt that Officer Kresha was lawfully performing his duties as a custodial officer. If the People have not met this burden, you must find the defendant not guilty of Count 1. Not guilty of Count 1.

"A custodial officer is not lawfully performing his duties if he is using unreasonable or excessive force in his duties.

"Special rules control the use of force.

"A custodial officer may use reasonable force in his duties to restrain a person, to overcome resistance, to prevent escape, or in self-defense.

"If a person knows or reasonably should know that a custodial officer is restraining him, that person must not use force or any weapon to resist an officer's use of reasonable force.

"If a custodial officer uses unreasonable or excessive force while restraining a person, that person may lawfully use reasonable force to defend himself.

"A person restrained—a person being restrained uses reasonable force when he uses that degree of force that he actually believes is reasonably necessary to protect himself from the officer's use of unreasonable or excessive force. And two, uses no more force than a reasonable person in the same situation would believe is necessary for his protection."

Gutierrez construes CALCRIM No. 2671 as enumerating "four circumstances in which the deputy is authorized to use force ('to restrain a person, to overcome resistance, to prevent escape, or in self-defense') and only one circumstance in which the defendant is authorized to defend himself ('to restrain a person')." He infers a "logical implication" in the instruction that "the defendant is *not* authorized to use force in those other three circumstances" from which "an improper legal theory upon which the jury could have convicted [him]" arises. Since "there is nothing in the record that excludes the possibility that the jury relied upon this illegal theory," he argues, the trial court instructed the jury "with an incorrect legal standard" that impermissibly lightened the prosecutor's burden of proof by misstating the elements of the crime. In reliance on *People v. Guiton* (1993) 4 Cal.4th 1116 [17 Cal.Rptr.2d 365, 847 P.2d 45] (*Guiton*), he argues the remedy is reversal per se. (*Id.* at p. 1128.)

█ To a limited degree, we agree with Gutierrez. Read literally, CALCRIM No. 2671 authorizes a custodial officer to use *reasonable* force in four situations—"to restrain a person, to overcome resistance, to prevent escape, or in self-defense"—but erroneously limits to the first situation alone not only the prohibition against the defendant's use of force or any weapon to resist *reasonable* force but also the authorization of the defendant's use of *reasonable* force to defend against *unreasonable* or *excessive* force. Nonetheless, on the record here, as we will explain, the error does not require reversal.

In *Guiton*, the issue was whether and, if so, how to harmonize the facially discordant rules in *Griffin v. United States* (1991) 502 U.S. 46 [116 L.Ed.2d 371, 112 S.Ct. 466] (*Griffin*) and *People v. Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468] (*Green*), overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225 [83 Cal.Rptr.2d 533, 973 P.2d 512], as stated in *People v. Morgan* (2007) 42 Cal.4th 593, 607 [67 Cal.Rptr.3d 753, 170 P.3d 129]. (*Guiton, supra,* 4 Cal.4th at p. 1119.) In *Guiton*, our Supreme Court

summarized the general rule in *Green*: " '[W]hen the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and *the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested*, the conviction cannot stand.' " (*Guiton, supra,* 4 Cal.4th at p. 1122, quoting *Green, supra,* 27 Cal.3d at p. 69, italics added.)

On the issue of whether *Green* survived *Griffin*, our Supreme Court noted the distinction *Griffin* drew "between a mistake about the law, which is subject to the rule generally requiring reversal, and a mistake concerning the weight or the factual import of the evidence, which does not require reversal when another valid basis for conviction exists," and quoted the crux of *Griffin*'s holding: " 'Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law— whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence . . . .' " (*Guiton, supra,* 4 Cal.4th at p. 1125, quoting *Griffin, supra,* 502 U.S. at p. 59.)

*Guiton* held that the rule in *Green* applies "only to cases of *legal* insufficiency in the *Griffin* sense." (*Guiton, supra,* 4 Cal.4th at pp. 1128–1129.) "If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground. But if the inadequacy is legal, not merely factual, that is, when the facts do not state a crime under the applicable statute, as in *Green*, the *Green* rule requiring reversal applies, *absent a basis in the record to find that the verdict was actually based on a valid ground.*" (*Id.* at p. 1129, italics added.) Since the error Gutierrez identifies in CALCRIM No. 2671 arguably gives rise to an improper legal theory upon which the jury could have convicted him, the *Green* rule applies.

Nonetheless, as affirmance is not always appropriate under *Griffin*, so reversal is not always appropriate under *Green*. (*Guiton, supra,* 4 Cal.4th at p. 1129.) "These are general rules to apply in the absence of a basis in the

record supporting the opposite result. But the record may sometimes affirmatively indicate that the general rule should not be followed." (*Ibid.*) "In determining whether there was prejudice, the entire record should be examined, including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict." (*Id.* at p. 1130.)

The facts show that Gutierrez was the aggressor and Kresha was the defender. Gutierrez initiated the confrontation by refusing to go back to his cell, bolting toward the receiving area, and disobeying commands to stop and put his hands behind his back. His conduct posed the security risks of catching an officer going through the door leading to the garage and of acquiring scissors or other items for use as weapons against officers. Only after the pepper spray proved ineffectual did Kresha try to stop Gutierrez's violent advance toward the receiving area by throwing punches back at him.

On the premise that Kresha's use of pepper spray was a use of force, Gutierrez insists a self-defense instruction was necessary since he used force only after Kresha did and since he broke Kresha's nose only after Kresha started throwing punches back at him. Gutierrez's contorted reading of the record is not at all persuasive. The record confirms the trial court's observation during the instruction-settling conference that self-defense was not an issue requiring instruction beyond that in CALCRIM Nos. 946 and 2671. We reject Gutierrez's argument that the trial court denied him his due process and jury trial rights by failing to instruct sua sponte on self-defense.

The instruction at issue, CALCRIM No. 2671, listed four circumstances ("to restrain a person, to overcome resistance, to prevent escape, or in self-defense") in which the detention deputy was authorized to use force but only one circumstance ("to restrain a person") in which the defendant was authorized to defend himself. Nonetheless, a literal reading of the instruction alone is no substitute for a careful reading of the entire record—bearing in mind the broad scope of the word "restrain," which means, inter alia, "hold back or keep in check; control," "hold (a person) back; prevent," "deprive of freedom or liberty," and "limit or restrict" (American Heritage Dict. of the English Language (4th ed. 2006) p. 1487) and "check, hold back, or prevent (a person or thing) *from* some course of action," "keep (one) in check or under control," "deprive of personal liberty or freedom of action," and "deprive (one) *of* liberty by restraint" (13 Oxford English Dict. (2d ed. 1989) pp. 756, col. 3 through 757, col. 1). Since the record, so read, shows Kresha attempting to restrain Gutierrez at all times during Gutierrez's violent

defiance of lawful authority, the *Green* rule requiring reversal does not apply, as "the verdict was actually based on a valid ground." (*Guiton, supra,* 4 Cal.4th at p. 1129.)

▮ Congruently, with no limitation at all, other language in the charge to the jury flatly barred a guilty verdict if Kresha used unreasonable or excessive force. Two of the elements of battery against a custodial officer are "the person committing the offense knows or reasonably should know that the victim is a custodial officer engaged in the performance of his or her duties . . ." and "the custodial officer is engaged in the performance of his or her duties . . . ." (§ 243.1.) CALCRIM No. 946 instructed the jury that a "custodial officer is not lawfully performing his duties if he is using unreasonable or excessive force in his duties." CALCRIM No. 2671 instructed the jury that a "custodial officer is not lawfully performing his duties if he is using unreasonable or excessive force in his duties" and that "the People have the burden of proving beyond a reasonable doubt that Officer Kresha was lawfully performing his duties as a custodial officer. If the People have not met this burden, you must find the defendant not guilty."

Likewise, counsel's arguments to the jury belie Gutierrez's argument. "Now the one way out for the defendant would be if there was excessive force used," the prosecutor argued. Congruently with the broad scope of the word "restrain," he argued, "A custodial officer may use reasonable force in his or her duties to restrain a person to overcome, one, resistance, two, to prevent escape, and three, in self-defense." The prosecutor's argument characterized the custodial officer's fundamental role as restraint ("to restrain a person," in the words of CALCRIM No. 2671) to which the other three situations in the instruction ("to overcome resistance, to prevent escape, or in self-defense") were subordinate. "So the defendant has no right to use force as long as Officer Kresha is acting in a lawful way," he argued.

Tacitly conceding the accuracy of the prosecutor's summary of the law, Gutierrez's trial attorney argued that his "involuntary reaction" to the pepper spray made him "flail and swing his arms around" and that Kresha's use of pepper spray to keep him from pushing on a secured door was not a "lawful performance of his duties" since the door could not be opened without either a command from the control room or a key from a detention deputy. In his closing argument, the prosecutor emphasized Kresha's testimony, in reply to the question whether Gutierrez's arms were flailing or whether he was taking swings, that "he was swinging at me, he was coming for me."

Deliberating for less than an hour, the jury sent a single note to the trial court—"We have reached a verdict"—and decided adversely to Gutierrez the issue whether his arm motions were an involuntary reaction to pepper spray or a battery on a custodial officer. Since the record affirmatively indicates that the general rule in *Green* should not be followed, we conclude beyond a reasonable doubt that the instructional error did not produce an improper verdict. (See *People v. Hughes* (2002) 27 Cal.4th 287, 352–353 [116 Cal.Rptr.2d 401, 39 P.3d 432], citing *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].)

### 3. *Sentencing Issue*

On the premise that the trial court had the statutory discretion to impose either a felony sentence or a misdemeanor sentence, Gutierrez argues that the imposition of a felony sentence with no showing in the record of the trial court's awareness of that discretion denied him due process. The Attorney General argues that the trial court had no such discretion.

█ In 1976, the Legislature enacted section 243.1 to punish the crime of battery against a custodial officer as a felony. (Stats. 1976, ch. 1139, § 150.1, p. 5105, operative July 1, 1977.)[2] Years later, the Legislature amended subdivision (b) of section 243 to punish the same crime as a misdemeanor. (Stats. 1982, ch. 1353, § 2, p. 5048.)[3] " '[W]hile our courts sometimes speak of the sections as though the distinction had something to do with the interpretation, at other times nothing is perceptible from which such inference could be drawn. On the whole, little depends on this matter, beyond mere convenience of citation.' " (*In re Wilson* (1925) 196 Cal. 515, 523 [238 P. 359], quoting Bishop, Commentaries on the Law of Statutory Crimes (1901) p. 61.) "Likewise, the provisions of the same code relating to the same subject matter are to be construed together as one act, as though all were

---

[2] In relevant part, the statute provides: "When a battery is committed against the person of a custodial officer . . . and the person committing the offense knows or reasonably should know that the victim is a custodial officer engaged in the performance of his or her duties, and the custodial officer is engaged in the performance of his or her duties, the offense shall be punished by imprisonment in the state prison." (§ 243.1.)

[3] In relevant part, the statute provides: "When a battery is committed against the person of a . . . custodial officer . . . engaged in the performance of his or her duties, . . . and the person committing the offense knows or reasonably should know that the victim is a . . . custodial officer . . . engaged in the performance of his or her duties . . . the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment." (§ 243, subd. (b).)

passed at the same time." (*Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 381 [137 Cal.Rptr. 332], citing *Rose v. State of California* (1942) 19 Cal.2d 713, 723 [123 P.2d 505].)

On that foundation, Gutierrez argues that the crime of battery against a custodial officer, for which section 243.1 authorizes felony punishment and subdivision (b) of section 243 authorizes misdemeanor punishment, is an "alternative felony/misdemeanor offense, also known as a 'wobbler,' " which our Supreme Court defines as "a felony unless charged as a misdemeanor by the People or reduced to a misdemeanor by the sentencing court under Penal Code section 17, subdivision (b)." (*People v. Statum* (2002) 28 Cal.4th 682, 685 [122 Cal.Rptr.2d 572, 50 P.3d 355]; see §§ 17, 18.) The Attorney General, on the other hand, argues that section 243.1 "contains no provision for an alternative punishment. Therefore, the trial court lacked discretion to contemplate or impose a misdemeanor penalty."

We need not reach that issue. Assuming, without deciding, that the trial court had statutory discretion to impose either a felony sentence or a misdemeanor sentence for the crime of battery against a custodial officer, we conclude, for two reasons, that the record shows no error.

First, in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496 [62 Cal.Rptr.2d 268], citing *People v. Moran* (1970) 1 Cal.3d 755, 762, 83 Cal.Rptr. 411 [463 P.2d 763]; *People v. Davis* (1996) 50 Cal.App.4th 168, 170–173 [57 Cal.Rptr.2d 659]; *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1521–1523 [56 Cal.Rptr.2d 749]; accord, Evid. Code, § 664.)

Second, the record shows that the trial court found no circumstances in mitigation, found five circumstances in aggravation, and observed just before imposing a 25-year-to-life three strikes law sentence, "He has a lengthy criminal record covering almost 16 years, he's performed poorly on both probation and parole, and has an extended history of violence." On that record, the trial court clearly would not have exercised sentencing discretion to impose a misdemeanor sentence. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530, fn. 13 [53 Cal.Rptr.2d 789, 917 P.2d 628], citing *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686].)

## DISPOSITION

The judgment is affirmed.

Wiseman, Acting P. J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 9, 2009, S174334.