Filed 7/7/25  P. v. Witherspoon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER JOHN WITHERSPOON,<br><br>    Defendant and Appellant. | H051671<br>(Monterey County<br> Super. Ct. No. 23CR003892) |

Christopher John Witherspoon appeals from his sentence after pleading open to gross vehicular manslaughter while intoxicated and being sentenced to six years in prison.  Witherspoon argues on appeal that the trial court abused its sentencing discretion by failing to "consider alternatives to incarceration" and using the "least restrictive means available" in the disposition of his case, as required by Penal Code section 17.2.[1]  We conclude the issue is not forfeited, but that on a silent record, Witherspoon cannot affirmatively show error.  We affirm the judgment.

## I.  BACKGROUND

In July 2023, the Monterey County District Attorney charged Witherspoon with gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count 1), driving under the influence of alcohol and causing injury (Veh. Code, § 23153, subd. (a);

---

[1] Undesignated statutory references are to the Penal Code.

count 2), and driving with a blood alcohol content of above 0.08 percent and causing injury (Veh. Code, § 23153, subd. (b); count 3). In connection with counts 2 and 3, the information further alleged that Witherspoon had an excessive blood alcohol content of 0.15 percent or greater and personally inflicted great bodily injury. The information alleged one circumstance in aggravation under California Rules of Court, rule 4.421(a)(1): That the charged offenses "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."[2]

### A. *Relevant Facts*[3]

Witherspoon, then a member of the United States Navy, went to a bar on a military base, where he ran into fellow servicemember, A.T. A.T. noted that Witherspoon appeared intoxicated, and when they left the bar together, she saw him drive away in his car. Witherspoon and A.T. arranged to meet later that night at another bar. When they met the second time, A.T. noticed Witherspoon's intoxication level was "heightened from her last interaction with him." A.T. tried to drive Witherspoon home but he was too drunk to tell her where he lived. After two failed attempts to find his home, A.T. dropped Witherspoon at his car but told him to sleep there and not to drive. Witherspoon assured A.T. he would not drive.

Soon after A.T. left him, witnesses observed Witherspoon drive the wrong way down a one-way street and crash into two parked cars. Witherspoon did not stop after the collisions but continued onto a freeway where, still driving in the wrong direction, he crashed head-on into a car driven by Luis Hernandez. Hernandez died at the scene.

---

[2] Undesignated rule references are to the California Rules of Court.

[3] Our summary of facts is taken from the transcripts of the preliminary examination, to which both parties stipulated as a factual basis for Witherspoon's plea.

After the crash, Witherspoon told the investigating officer that he was "probably" driving but could not remember. Witherspoon's blood alcohol level an hour after the fatal collision registered in preliminary alcohol screening at .209 and .208 percent.

Witherspoon pleaded no contest to count 1 of the information, gross vehicular manslaughter while intoxicated, with the understanding that all remaining counts and enhancements would be dismissed at the time of sentencing.

## B. Sentencing

Witherspoon filed a sentencing memorandum before the hearing. In it, he did not reference section 17.2 but argued that the court should grant probation because he is presumptively eligible for probation, and all the criteria affecting probation under rule 4.414(b) favored him. In support, Witherspoon provided a social history compilation, many letters of support, school records highlighting his academic excellence, and certificates of achievement from classes he attended while in custody.

The probation department and district attorney each acknowledged that Witherspoon was presumptively eligible for probation but recommended a prison sentence.

At the start of the sentencing hearing, the court stated that its array of sentencing choices was "limited" and acknowledged its discretion to grant Witherspoon probation. The court said it had read the defense memorandum "and every single letter" in support, then heard additional argument from the defense and additional victim impact statements from Hernandez's daughter and granddaughter.

The court agreed with Witherspoon that each of the rule 4.414(b) factors favored a grant of probation. Specifically, the court found that Witherspoon had "no prior record of any kind," was intelligent, and had strong family and community support. (Rule 4.414(b)(1), (4).) The court found that Witherspoon had expressed genuine remorse, appeared to understand the consequences of his conduct, and had otherwise led a law-abiding life.

Balanced against these factors, the court examined the nature, seriousness, and circumstances of the crime as compared to other instances of the same crime. The court stated, "[T]here is no good decision today. There is only the decision I can make based upon this case looking at all the other cases where somebody has died as a result of driving under the influence of alcohol." In "looking at this case and . . . at other [similar] cases," the court characterized Witherspoon's offense as "incredibly serious and dangerous." The court emphasized that what made the offense more aggravated was that Witherspoon did not stop his dangerous conduct "when things normally stop": Even after hitting two parked cars, Witherspoon persisted in driving and continued onto the freeway in the wrong direction, where he killed Hernandez. The court noted that Witherspoon had "many, many opportunities to stop and check himself" before the fatal collision but did not do so. Ultimately, the court determined "this matter is not appropriate for probation" and sentenced Witherspoon to the middle term of six years in prison.

Witherspoon timely appealed.

## II. DISCUSSION

On appeal, Witherspoon contends the trial court abused its discretion by failing to consider section 17.2.[4] Specifically, Witherspoon argues that in imposing a six-year sentence, the court failed to follow section 17.2, subdivision (a)'s directive to use "the least restrictive means available" in the disposition of a criminal case and instead

---

[4] In positing that an error of law informed the trial court's exercise of sentencing discretion, Witherspoon implicitly recognizes that "a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Our assumption that another reasonable sentencing judge could have demonstrated greater leniency in view of Witherspoon's background and history, despite the gravity of his offense and the entreaties of Hernandez's anguished family, does not alter our deferential standard of review.

4

analyzed the case "through the former lens of incarceration as the default." Witherspoon contends that had the court followed section 17.2, it is reasonably probable that the court would have granted him probation or imposed the low term. While we conclude that Witherspoon's failure to reference section 17.2 in the trial court does not forfeit the claim on appeal, we will decline to remand the matter for resentencing because Witherspoon has not affirmatively shown error.

### A. Section 17.2

Effective January 1, 2023, section 17.2 provides: "It is the intent of the Legislature that the disposition of any criminal case use the least restrictive means available." (Stats. 2022, ch. 775, § 2.) To that end, "[t]he court presiding over a criminal matter shall consider alternatives to incarceration, including, without limitation, collaborative justice court programs, diversion, restorative justice, and probation." (§ 17.2, subd. (b).) "The court shall have the discretion to determine the appropriate sentence according to relevant statutes and the sentencing rules of the Judicial Council." (§ 17.2, subd. (c).)

Recently, the Supreme Court clarified that "while section 17.2 states a preference for the least restrictive criminal disposition, the Legislature's use of the words 'available' and 'according to relevant statutes and the sentencing rules of the Judicial Council' indicate that the Legislature did not intend to alter existing statutory requirements." (*People v. Braden* (2023) 14 Cal.5th 791, 818.) In addition, the Legislature explained that in enacting section 17.2, "[i]t is the intent of the Legislature that the court presiding over a criminal matter impose an alternative to incarceration, except where incarceration is necessary to prevent physical injury to others *or the interests of justice would best be served by incarceration*." (Assem. Bill No. 2167 (2021–2022 Reg. Sess.) § 1, italics added.)

5

### B. *Forfeiture*

Preliminarily, we reject the Attorney General's contention that Witherspoon forfeited our consideration of this claim of sentencing error by failing to reference section 17.2 in the trial court. Acknowledging that Witherspoon "made a vigorous case for probation," the Attorney General asserts that Witherspoon had to "mention section 17.2 specifically" to preserve his claim. But the core of Witherspoon's contention in the trial court, as on appeal, was that he was presumptively eligible for and should have been granted probation or at worst the mitigated term. And though Witherspoon did not specifically cite section 17.2, " 'no useful purpose is served by declining to consider on appeal a claim that merely restates, under alternative legal principles, a claim otherwise identical to one that was properly preserved by a timely motion that called upon the trial court to consider the same facts and to apply a legal standard similar to that which would also determine the claim raised on appeal.' " (*People v. Partida* (2005) 37 Cal.4th 428, 436.) Such is the case here, and we decline to find Witherspoon's section 17.2 claim forfeited.[5]

### C. *No Affirmative Showing of Error*

On the merits, we presume the trial court was aware of and followed applicable law, and the appellant bears the burden of affirmatively demonstrating error. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; see also *People v. Giordano* (2007) 42 Cal.4th 644, 666 (*Giordano*) [holding that to overcome this presumption of correctness, " ' "error must be affirmatively shown" ' "].) These general rules "concerning the presumption of regularity of judicial exercises of discretion apply to sentencing issues." (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517; *People v. Coleman* (2024) 98 Cal.App.5th 709, 724 (*Coleman*) [declining to remand matter for resentencing on grounds that

---

[5] Because we decline to apply forfeiture and will reach the merits of Witherspoon's claim, we need not address his alternative claim for ineffective assistance of counsel. (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 327.)

defendant failed to "affirmatively demonstrate[] that the trial court was unaware of or misunderstood the scope of its sentencing discretion"].)

Witherspoon argues this presumption of correctness should not apply here because section 17.2 represented a "significant change" in the law and had been in effect for "under a year . . . with minimal litigation."  But the presumption does not distinguish between "significant" and "insignificant" changes in law, however quantified, but requires us—"[i]n the absence of evidence to the contrary"—to "presume that the court 'kn[ew] and applie[d] the correct statutory and case law' " at the time of sentencing. (*People v. Thomas* (2011) 52 Cal.4th 336, 361; *People v. Weddington* (2016) 246 Cal.App.4th 468, 492 ["On appeal, we presume that the trial court followed established law and thus properly exercised its discretion in sentencing a criminal defendant"].)

Nor are we persuaded that we should decline to apply this presumption of correctness because the statute had only been in effect for a short time.  Operative for almost a year at the time of Witherspoon's sentencing, section 17.2 was no longer a fresh development that we might assume the trial court was unaware of.  (See *Coleman, supra*, 98 Cal.App.5th at p. 724 [remand for consideration of Sen. Bill No. 81 [(2021–2022 Reg. Sess.)] not required where the new sentencing law had been in effect for more than four months when defendant was sentenced].)

Witherspoon next argues the trial court evinced ignorance of section 17.2 by analyzing the case "through the former lens of incarceration as the default."  As support, Witherspoon relies on the court's reference to "all the other cases where somebody has died as a result of driving under the influence of alcohol" without specifying whether these other cases predated the operative date of section 17.2.  From this, Witherspoon argues that "in the court's analysis, the loss of life required a default of incarceration despite [the court's] own observations that appellant was not only a suitable candidate for probation but likely an ideal one."

7

If the trial court had opted to calibrate Witherspoon's sentence based on sentences imposed before section 17.2 for other DUI fatalities, Witherspoon's argument might have more force. But "we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of [its sentencing] discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) Instead, we must indulge " ' "[a]ll intendments and presumptions" ' " in favor of the judgment. (*Giordano*, *supra*, 42 Cal.4th at p. 666.)

Adhering to that rule here, we construe the court's comment as comparing only the specifics of Witherspoon's offense to those of other DUI fatalities with which the court was familiar. That is, rather than comparing sentences, the court compared the *conduct* underlying these "other cases" of the court's experience against this one and concluded that Witherspoon's conduct was more aggravated than what the court considered a more typical gross vehicular manslaughter. This interpretation is consistent with rule 4.414(a), which permits the sentencing court to consider "[*f*]*acts* relating to the crime" as one of the criteria affecting probation. (Rule 4.414(a), italics added.)

Our deferential interpretation of the trial court's comment finds further support in the court's later comments—that Witherspoon's decision to drive drunk notwithstanding the admonitions of his friend did not make his case extraordinary when "compared to other manslaughter cases," but that Witherspoon did not stop his dangerous conduct "when things normally stop." Here too, the court was comparing offenses, not sentences.

Nor may we read the court's remark as reflecting a "default of incarceration," rather than the "least restrictive" disposition. (§ 17.2, subd. (a).) The court acknowledged from the start that felony probation was among its options in sentencing Witherspoon and recognized that many aspects of Witherspoon's history and characteristics supported a grant of probation. But the court necessarily considered those favorable factors against the aggravated nature of the offense and its impact. We think an equally plausible interpretation of the court's remark that "[t]here is only the decision I

8

can make based upon this case looking at all the other [similar] cases" is that having expressly considered alternatives to incarceration, the court nevertheless found the relatively aggravated facts and circumstances of Witherspoon's offense made incarceration and the middle term necessary to best serve the interests of justice. (See Assem. Bill No. 2167 (2021–2022 Reg. Sess.) § 1.) This interpretation is consistent with section 17.2, and so the one we must adopt here. (See *Giordano*, *supra*, 42 Cal.4th at p. 666.)

In sum, nothing in the record suggests that the court relied on sentences imposed before the enactment of section 17.2 to determine Witherspoon's sentence, and we cannot presume error from this silent record. Because Witherspoon has not "affirmatively demonstrated that the trial court was unaware of or misunderstood the scope of its sentencing discretion," a remand for resentencing is not warranted. (*Coleman*, *supra*, 98 Cal.App.5th at p. 724; see also *People v. Brown* (2007) 147 Cal.App.4th 1213, 1229 ["[R]emand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record"].)

## III.    DISPOSITION

The judgment is affirmed.

9

_____

LIE, J.

WE CONCUR:


_____

GREENWOOD, P. J.


_____

GROVER, J.


*People v. Witherspoon*
H051671