Filed 1/23/26  P. v. Garcia CA6

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE GARCIA, JR.,<br><br>    Defendant and Appellant. | H051366<br>(Santa Clara County<br> Super. Ct. No. C1361295) |

This appeal concerns a resentencing.  In 2014, Jose Garcia, Jr. pleaded guilty to three offenses, and he was sentenced to 34 years in prison, mostly for three enhancements: (1)  personally discharging a firearm and causing great bodily injury under Penal Code section 12022.53, subdivision (d); (2) personally using a firearm in committing a felony under Penal Code section 12022.5, subdivision (a), and (3) committing violent felonies on behalf of a gang under Penal Code section 186.22, subdivision (b)(1)(C).  (Subsequent undesignated statutory references are to the Penal Code.)  In 2018, in light of a Supreme Court decision suggesting that it was improper to impose multiple enhancements for a single offense, the Department of Corrections and Rehabilitation recommended that Garcia be resentenced.  The trial court did so, striking punishment for the personal use of a firearm enhancement and thereby reducing Garcia's sentence by one year and four months.  However, the trial court denied Garcia's request

to strike any of the remaining enhancements despite mitigating circumstances favoring dismissal under section 1385.

On appeal, Garcia argues that the trial court should have stricken the personal firearm use enhancement in its entirety rather than just striking the punishment for it. In addition, Garcia argues that the trial court should have stricken other enhancements under section 1385 and ordered a supplemental probation report. As explained below, we disagree with these arguments and therefore affirm the judgment resentencing Garcia.

## I. BACKGROUND

### A. The Offenses

Because Garcia pleaded no contest, we draw the description below of his offenses from the preliminary hearing.

Garcia was a member of a gang. Early in the morning of July 13, 2013, Ricardo Angel Espana, a fellow gang member, drove Garcia in San José. Around 2:50 a.m., they screeched to a halt next to a garage where David Pineda, his cousin, and several friends were gathered with the door open. Without saying a word, Garcia fired a shotgun blast from the passenger's seat into the garage. Although Pineda had anticipated an attack and tried to run, the blast him in the head. As a result, Pineda lost vision in his right eye, and because he fell to the ground, one of his teeth was cracked in half, and his nose was broken.

Minutes later, around 3:00 a.m., two men stopped a car near Juan Antonio Garcia Garduno, who was parked waiting for a friend. When Garduno later drove away, Garcia told Garduno to stop and then fired four shotgun blasts into the side of Garduno's car. Afterwards, Garduno, who was unharmed, called the police and described the other car.

Around 3:30 a.m., a police officer spotted a car matching Garduno's description. The car was moving recklessly at an unsafe speed, and the occupants threw a shotgun out the window. The officer pulled the car over and arrested both Garcia, who was in the

2

passenger seat, and Espana.  The police subsequently recovered the shotgun thrown from the car.

## B. The Prosecution

In 2014, Garcia was charged with two counts of attempted murder under sections 187, 189, and 664, subdivision (a); one count of shooting at an inhabited dwelling under section 246; and one count of shooting at an occupied motor vehicle under section 246.  The information also alleged several enhancements.  With respect to all four charges, the information alleged that Garcia committed the charged offense for the benefit of a criminal street gang under section 186.22, subdivision (b).  In addition, on the charges for the attempted murder of Pineda and shooting at an inhabited building, the information alleged that Garcia personally discharged a firearm and caused great bodily injury under section 12022.53, subdivision (d).

Before Garcia's plea, the information was amended to add a fifth count for assault with a firearm under section 254, subdivision (a)(2), with two enhancements: one for committing a serious gang felony under section 186.22, subdivision (b), and a second for personal firearm use in committing a felony under section 12022.5, subdivision (a).

In September 2016, Garcia pleaded no contest to the attempted murder of Pineda, shooting at an inhabited dwelling, and assault with a firearm.  Garcia also admitted the enhancements for personally discharging a firearm and causing greatly bodily injury, committing a violent felony for the benefit of a criminal street gang, and personally using a firearm in committing felony.  The remaining charges, the second attempted murder and shooting at an occupied vehicle, were dismissed.

In December 2016, the trial court sentenced Garcia to a total sentence of 34 years, 4 months.  Enhancements made up most of this sentence.  For the three offenses of conviction, the trial court sentenced Garcia to 9 years, 8 months: 7 years for attempted murder; 1 year, 8 months for shooting at an occupied dwelling; and 1 year for assault with a firearm.  For the enhancements, the court sentenced Garcia to 24 years, 8 months:

3

10 years for the gang enhancement on the attempted murder conviction; 10 years for the discharging a firearm and causing great bodily injury enhancement on the attempted murder conviction; 3 years, 4 months for the gang enhancement on the assault conviction; and 1 year, 4 months for the using a firearm during a felony enhancement on the assault conviction. The court also imposed a gang enhancement on the shooting at an occupied dwelling conviction, but struck the punishment for that enhancement.

Garcia did not appeal either his convictions or his sentence.

## C. The Resentencing

On August 7, 2018, the Department of Corrections and Rehabilitation sent the trial court a letter authorizing resentencing under what is now section 1172.1 in light of the Supreme Court's 2015 decision in *People v. Le* (2015) 61 Cal.4th 416 (*Le*). Under section 1170.1, when a defendant is subject to multiple firearm enhancements for a single offense, only one enhancement (the greatest) may be imposed. (§ 1170.1, subd. (f).) In *Le*, the Supreme Court held that this provision applies to gang enhancements predicated on firearm use. (*Le*, at pp. 419-420.) As the gang enhancements in this case were predicated on such use, and the trial court found true a personal firearm use enhancement as well as a gang enhancement for the assault conviction, the Department informed the trial court that Garcia's sentence warranted attention.[*]

Garcia asked that, in addition to the personal firearm use enhancement on the assault conviction, the trial court strike other enhancements under section 1385 and thereby reduce his sentence to less than 20 years. In response, the People acknowledged that Garcia was entitled to resentencing under section 1170.1. However, the People

_____

[*] The Department did not suggest that the enhancements on the attempted murder conviction warranted attention, apparently because the firearm enhancement on that conviction was for both using a firearm and inflicting great bodily injury. (See § 1170.1, subd. (f) ["This subdivision shall not limit the imposition for any other enhancements applicable to that offense, including an enhancement for the infliction of great bodily injury."].)

requested that only the punishment for the personal firearm use enhancement on the assault conviction be stricken and that the sentence imposed on Garcia otherwise be reinstated.

In August 2023, after conducting a resentencing hearing, the trial court agreed with the People. Applying section 1170.1, subdivision (f), the trial court struck the punishment for the lesser enhancement on the assault conviction: the 1 year, 4 month sentence for the personal firearm use enhancement under section 12022.5, subdivision (a). However, the court denied Garcia's request to strike additional enhancements under section 1385. Garcia argued that under section 1385 additional enhancements should be stricken in light of two mitigating circumstances: (1) multiple enhancements were alleged and (2) application of more than one enhancement would result in a sentence greater than 20 years. (§ 1385, subd. (c)(2)(B), (C).) While the People did not dispute the presence of these mitigating circumstances, they argued that no enhancements should be struck under section 1385 because Garcia presents a danger to the public and "[t]he court has no assurances that he will not be [a] danger if released early in this case." The trial court agreed with the People and declined to strike any additional enhancements on the ground that doing so "would endanger public safety" because "there's a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

Accordingly, the trial court struck the punishment for the personal firearm use enhancement on the assault conviction, thereby reducing Garcia's sentence by 1 year, 4 months, and resentenced him to a total of 33 years.

Garcia filed a timely notice of appeal.

## II. DISCUSSION

Garcia challenges his resentencing on three grounds: (1) the trial court should have struck the firearm enhancement in count five in its entirety rather than just striking the punishment for it, (2) the court should have ordered a supplemental probation report, and

5

(3) the court applied an erroneous standard in finding that striking other enhancements would endanger public safety. We address each argument below.

## A. The Firearm Enhancements

The trial court recognized that, under section 1170.1, it could not impose sentences in connection with the assault conviction for both a personal firearm use enhancement under section 12022.5 and a gang enhancement under section 186.22 based on firearm use. However, rather than striking the personal firearm use enhancement, the lesser of the two enhancements, the court imposed this enhancement and struck the punishment for it. Although Garcia did not object in the trial court, he now argues that, by imposing the enhancement but then striking the punishment for it, the trial court created an unauthorized sentence. (See *People v. Scott* (1994) 9 Cal.4th 331, 354 [noting that unauthorized sentences are reviewable even if not challenged in the trial court].) Reviewing this question of law de novo (*People v. Espino* (2024) 104 Cal.App.5th 188, 194 (*Espino*)), we disagree. As the Supreme Court recognized in *People v. Gonzalez* (*Silvestre*) (2008) 43 Cal.4th 1118, 1125 (*S. Gonzalez*), the word "impose" may be used as a shorthand for "imposed and *executed*," and therefore when a statute permits only one enhancement to be "imposed" in this sense, it permits other enhancements to be imposed but not executed because punishment was either stayed or stricken.

With respect to an obligation or penalty, the word "impose" ordinarily means "to make, frame, or apply (as a charge, tax, obligation, rule, penalty) as compulsory, obligatory or enforce[a]ble." (Webster's 3d New Internat. Dict. (1993) p. 1136, col. 1; see also American Heritage Dict. (5th ed. 2011) p. 883, col. 2 [defining "impose" to mean "establish or apply as compulsory" or "bring about by authority or force"].) Accordingly, unless the context indicates otherwise, the word " 'imposed' " is "naturally read" to apply to a sentencing enhancement if that enhancement "was 'imposed' . . . not just if it was 'imposed *and* executed.' " (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1063.) However, the word " 'impose' " also is " 'often employed as a shorthand' " for " 'imposed and then

6

*executed.*' " (*S. Gonzalez*, *supra*, 43 Cal.4th at p. 1125.)  Accordingly, in a sentencing enhancement provision, the meaning of the word "imposed" depends on the context in which it is used.  (*Espino*, *supra*, 104 Cal.App.4th at p. 197.)

In *S. Gonzalez*, the Supreme Court held that a sentencing enhancement provision much like section 1170.1 uses the word " 'impose' " as a shorthand for impose and execute.  (*S. Gonzalez*, *supra*, 43 Cal.4th at pp. 1126-1127.)  *S. Gonzalez* dealt with section 12022.53.  Much like the enhancement in section 12022.5 at issue here, section 12022.53 provides enhancements for firearm use:  Specifically, section 12022.53 provides for an additional 10 years of imprisonment if a firearm is used in committing certain felonies.  (§ 12022.53, subd. (b); see also § 12022.53, subd. (a) [listing felonies].)  In addition, section 12022.53 states that only one such enhancement "shall be imposed per person for each crime" and that, "[i]f more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment."  (§ 12022.53, subd. (f).)  By referring to the enhancement with the "longest term of imprisonment," section 12022.53 implicitly assumes that the enhancements "imposed" are imposed and executed with terms of imprisonment that can be compared, not enhancements that are imposed but whose punishment is then stayed or stricken, resulting in no term.  (*S. Gonzalez*, at pp. 1127-1128.)  Accordingly, in *S. Gonzalez*, the Supreme Court concluded that in section 12022.53 the word "impose" refers to enhancements are imposed and then executed (*S. Gonzalez*, at p. 1127), and it therefore held that, after imposing punishment for the section 12022.53 enhancement with the longest term of imprisonment, section 12022.53 enhancements with shorter sentences may be imposed and then stayed.  (*S. Gonzalez*, at p. 1130.)

The same conclusion applies to section 1170.1.  Much as section 12022.53 provides that, when multiple enhancements are found true, the court shall "impose" the enhancement with the "longest term of imprisonment" (§ 12022.53, subd. (f)),

7

section 1170.1 provides that, when multiple firearm enhancements may be imposed for a single offense, "only the greatest of those enhancements shall be imposed." (§ 1170.1, subd. (f).) Like section 12022.53, by referring to the "greatest" of the enhancements, section 11701 implicitly assumes that the enhancements "imposed" are ones that are imposed and executed with terms of imprisonment that can be compared. Accordingly, just as context shows that section 12022.53 uses the term "imposed" as a shorthand for imposed and then executed (*S. Gonzalez*, *supra*, 43 Cal.4th at p. 1127), context shows that section 1170.1 uses the term "imposed" in that fashion.

Consequently, the trial court did not violate section 1170.1 and impose an unauthorized sentence by imposing the lesser enhancement for the assault conviction— the personal firearm use enhancement under section 12022.5—but then striking punishment for it.

## B. **The Probation Report**

In addition to contending that the trial court should have struck the personal firearm use enhancement in its entirety, Garcia contends the court erred by not ordering a supplemental probation report. However, as the People point out, Garcia did not ask the trial court to order such a report or object when the court failed to do so on its own, thereby depriving the court of the opportunity to cure any error it may have committed. Accordingly, Garcia has forfeited any appeal based on this issue. (See, e.g., *People v. Campbell* (2023) 98 Cal.App.5th 350, 385 ["failure, by a defendant who was not eligible for probation, to request a supplemental probation report or object to proceeding without one resulted in . . . 'forfeiture of the right to object to the absence of such a report on appeal' "]; *People v. Franco* (2014) 232 Cal.App.4th 831, 834 ["such omissions result in waiver of a supplemental report in the trial court and forfeiture of the right to object to the absence of such a report on appeal"]; *People v. Llamas* (1998) 67 Cal.App.4th 35, 39 ["We conclude that Llamas has waived his right to object to the absence of a supplemental report by failing to do so in the trial court."].)

8

In addition, Garcia has failed to show that he was prejudiced by the trial court's failure to order a supplemental probation report. Because Garcia's asserted right to a supplemental probation report arises under state law, to establish that violation of that right prejudiced him, Garcia must demonstrate a reasonable probability of a more favorable result absent the violation. (*People v. Watson* (1956) 46 Cal.2d 818.) However, far from explaining how a supplemental probation report would have led to a more favorable result, Garcia merely notes that "[s]uch a report *could* have provided a greater breadth of information for the court to consider" as well as "information regarding whether Mr. G[ar]cia would 'endanger public safety.' " (Italics added.) In addition, other than asserting that he was married and has family support, Garcia fails to identify what that information would have been or would have shown. Such vague assertions do not demonstrate a reasonable probability that, if a supplemental probation report had been ordered, the trial court would have reached a different conclusion concerning Garcia's future dangerousness or otherwise reached a different result. (*People v. Caro* (2019) 7 Cal.5th 463, 479 ["We reject general claims that a defendant might have provided useful input as 'unduly speculative.' "]; *People v. Begnaud* (1991) 235 Cal.App.3d 1548, 1556, fn. 7 ["A defendant should not be allowed to stand silent when the court proceeds without a supplemental probation report, gamble that a trial court will impose a lesser term of imprisonment and then urge reversal for the failure to obtain the report without being required to make some showing that he was prejudiced thereby."].)

Apparently attempting to shift the burden onto the People, Garcia contends that the failure to order a supplemental probation report violated his federal due process rights and therefore harmlessness must be established beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24. While due process guarantees criminal defendants sentencing decisions "made in the exercise of the 'informed discretion' of the sentencing court" (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8), Garcia fails to

9

show that, absent a supplemental probation report, the trial court lacked sufficient information to exercise such discretion.

Accordingly, we conclude that Garcia forfeited any challenge to the trial court's failure to order a supplemental probation report and, in any event, has not shown this failure prejudiced him.

### C. **Public Safety**

After the trial court struck the punishment for the personal firearm use enhancement on the assault count, Garcia was still subject to three enhancements imposing over 23 years of imprisonment. In the trial court Garcia moved under section 1385 to strike two of these enhancements based on two mitigating circumstances: There were multiple enhancements, and application of these enhancements resulted in a sentence more than 20 years. (See § 1385, subd. (c)(2)(B), (C).) Under section 1385, these mitigating circumstances "weigh[] greatly in favor of dismissing the enhancement, unless the court find that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Garcia contends that, in finding a danger to public safety and refusing to dismiss enhancements, the trial court improperly focused on his present dangerousness rather than the danger he would pose in the future when released. We review the trial court's application of section 1385 for abuse of discretion, including whether the trial court based its decision on impermissible factors or erroneous standards. (*People v. Gonzalez* (*David*) (2024) 103 Cal.App.5th 215, 225 (*D. Gonzalez*).) We find no abuse.

As the Supreme Court has admonished, "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on the appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Accordingly, in reviewing sentencing decisions, appellate courts "may not presume error from a silent record." (*People v.*

10

*Knowles* (2024) 105 Cal.App.5th 757, 765.) To the contrary, appellate courts must "presume that the trial court acted to achieve legitimate sentencing objectives" (*ibid*.) and that the trial court was "aware of the applicable law, including statutory discretion at sentencing." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

There is no evidence supporting Garcia's accusation that, in finding that striking enhancements would pose a danger to public safety, the trial court erroneously focused on present rather than future dangerousness. (See *D. Gonzalez, supra*, 103 Cal.App.5th at p. 229 [in determining whether striking enhancements would create a danger to public safety, courts "must look to when a defendant would be released if the petition is granted and the defendant is resentenced"].) Garcia notes that, in finding a danger to the public, the trial court observed that " '[e]ndanger public safety means there's a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " However, far from suggesting that it was focusing on present dangerousness, the trial court considered whether dismissal "*would* result" in physical injury, which suggests that the court was examining what would happen in the future if enhancements were stricken and Garcia were released earlier.

This conclusion is supported by both the briefing and the argument. Both parties urged the trial court to focus on Garcia's future, not present, dangerousness. In arguing that Garcia posed a danger to public safety, the People observed that "[t]he court has no assurance that he will not be [a] danger if released early in this case," and Garcia similarly stressed in his reply that the court should focus on "the defendant after release from prison." Nor is there any suggestion in the resentencing hearing by the trial court that it was departing from the understanding of the parties.

We therefore conclude that Garcia has failed to overcome the presumption that the trial court understood and properly applied the standard for determining danger to public safety, and therefore the trial court did not abuse its discretion in denying Garcia's request to strike sentencing enhancements under section 1385.

### III. Disposition

The judgment is affirmed.

_____
BROMBERG, J.


WE CONCUR:



_____
GREENWOOD, P. J.



_____
DANNER, J.



*People v. Garcia*
H051366