Filed 3/18/26  P. v. Garcia CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C098282 |
| Plaintiff and Respondent, | (Super. Ct. No. CR20157320) |
| v. | OPINION ON TRANSFER |
| JORGE ANDRES TORRES GARCIA, | |
| Defendant and Appellant. | |

Defendant Jorge Andres Torres Garcia pled no contest to voluntary manslaughter after being charged with felony murder based on a killing occurring during a robbery. Defendant then testified at his codefendant's trial, who was thereafter acquitted of all charges.  Defendant later filed a resentencing petition under Penal Code[1] section 1172.6,[2]

---

[1]     Undesignated section references are to the Penal Code.

[2]     Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  Defendant filed his

which the trial court denied after holding an evidentiary hearing. On appeal, defendant argued the trial court erred because: (1) his codefendant's acquittal for robbery undermines the basis for finding him guilty of felony murder; (2) there was no substantial evidence he was a major participant in the robbery who acted with reckless indifference to human life; and (3) the trial court failed to consider his youth.

We affirmed, but our Supreme Court granted review and transferred the case back to this court with directions to vacate our decision and reconsider the cause in light of *People v. Emanuel* (2025) 17 Cal.5th 867 (*Emanuel*). The parties filed supplemental briefs. Having reconsidered the matter in light of *Emanuel*, we again affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant, along with codefendant Lance Richard Ornellas-Castro, was charged with three felonies: murder with a robbery special circumstance allegation, attempted second degree robbery, and conspiracy to commit a felony.

On January 17, 2017, defendant pled no contest to voluntary manslaughter, robbery, conspiracy to commit a felony (robbery), and a firearm enhancement that a principal was armed. The plea agreement included a stipulated term of 14 years if defendant agreed to truthfully testify at Ornellas-Castro's trial.

I

*Trial Testimony*

Defendant testified at Ornellas-Castro's trial in February 2017. Defendant testified he met Ornellas-Castro when they worked at the same fast-food restaurant. Defendant knew Ornellas-Castro was a gang member and the two texted each other about stealing from other people. This included pretending to buy drugs from someone then rob them. Ornellas-Castro sent defendant a text saying: "[L]et's set shit up. I want to

___

petition under former section 1170.95, but we will refer to the current section 1172.6 throughout this opinion.

take all this nigga's shit, and then he'll try to get some straps and I'll catch him slippin and take those too, ha ha ha." Defendant explained they planned on taking this person's drugs and guns, i.e. "straps," by pretending to want to buy drugs from him, but they never acted on this idea.

In November 2015, defendant met Andrew Phauthoum at a friend's house and defendant bought cannabis from Phauthoum that day. Defendant texted Phauthoum about a week later and they met in a parking lot so defendant could buy more cannabis. Defendant knew Phauthoum was associated with a gang defendant was told not to mess with.

In December 2015, defendant called Phauthoum to buy more cannabis from him. Defendant told Ornellas-Castro about the deal and Ornellas-Castro wanted to join. On the drive to meet Phauthoum, Ornellas-Castro and defendant discussed increasing the order and Ornellas-Castro suggested they take the drugs from Phauthoum. Defendant then called Phauthoum and ordered a total of six ounces of cannabis and a quarter ounce of cocaine, worth roughly $800 total. Defendant explained they planned to tell Phauthoum "to get in the car and just tell him to give [them] the drugs." If Phauthoum did not give them the drugs, they would show Phauthoum a small revolver in Ornellas-Castro's possession. Defendant had seen Ornellas-Castro carry the gun every day. When the prosecutor asked defendant to reiterate their intent, defendant testified they intended to meet Phauthoum "[t]o rob him" by taking the drugs after flashing Ornellas-Castro's gun.

Defendant and Ornellas-Castro planned to meet Phauthoum in a grocery store parking lot. Defendant was driving and told Ornellas-Castro to move from the passenger seat to the back in case Phauthoum resisted them taking the drugs. When Ornellas-Castro and defendant arrived at the grocery store parking lot for the exchange, it was night and even though there were parking lot lights, the inside of the car was "[k]ind of dark." Phauthoum got into their car and sat in the front passenger seat next to defendant.

Phauthoum handed defendant a box with two bags of cannabis and said he was waiting on a call for the cocaine. Defendant then introduced Phauthoum to Ornellas-Castro, the two began talking, and then defendant heard a gunshot. Defendant looked over and saw Phauthoum slouched with a bullet hole in his forehead. Defendant testified he didn't think he heard any argument but was "zoned out" looking at the cannabis.

After the gunshot, defendant drove away. Defendant asked what happened and Ornellas-Castro said Phauthoum "flexed on him, like he was reaching for something." Defendant reached in Phauthoum's pockets and found a cell phone, which he threw into a river as they were driving over a bridge.

Defendant and Ornellas-Castro decided to dump Phauthoum's body in the river and defendant drove to a slough where he used to fish. When they got to the slough, Ornellas-Castro pulled Phauthoum out of the car and then defendant heard a gunshot. Defendant walked to the other side of the car and saw Ornellas-Castro checking Phauthoum and taking off his clothes. Defendant and Ornellas-Castro then carried Phauthoum's body into the slough, drove back to Ornellas-Castro's apartment, and tried to clean the blood from the car. Defendant then split the cannabis with Ornellas-Castro and went home; defendant planned to sell the cannabis.

The jury acquitted Ornellas-Castro of all charges.

II

*Petition For Resentencing*

On May 2, 2017, the trial court sentenced defendant pursuant to the plea agreement to 14 years. On January 18, 2022, defendant filed a petition for resentencing under section 1172.6, contending he was charged with murder but could not now be convicted of murder due to changes to the murder statutes. The trial court issued an order to show cause and held an evidentiary hearing on the petition on March 29, 2023. Defendant's counsel argued at the hearing the prosecution is precluded from arguing the underlying robbery is valid due to the jury acquitting Ornellas-Castro of robbery.

4

Defendant's counsel argued alternatively that defendant was not a major participant who acted with reckless indifference to human life.

The trial court said it had reviewed the parties' briefing and defendant's testimony at his codefendant's trial. The trial court also reviewed defendant's statements made to a law enforcement official before Ornellas-Castro's trial that were consistent with defendant's testimony at trial. But in these statements, defendant also told the officer Ornellas-Castro told defendant he shot Phauthoum again when dumping his body because Phauthoum "was moving." Defendant also explained he was afraid of Ornellas-Castro because "he's kinda crazy sometimes. [¶] . . . [¶] When he'd drink[,] he'd get pretty loud. Always, like, kinda like aggressive." Defendant was further afraid because he had heard stories of Ornellas-Castro shooting at someone at a supermarket and Ornellas-Castro asked defendant if he wanted to join his gang.

The trial court first found issue preclusion inapplicable under *People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1 (*Sparks*). The trial court then found, "[T]he record supports a conclusion beyond a reasonable doubt that [defendant] was a major participant and that he acted with reckless indifference to human life. Therefore, the [c]ourt does not believe that he's entitled to relief under [section] 1172.6."

Defendant appeals.

DISCUSSION

I

*Ornellas-Castro's Acquittal Did Not Preclude Finding Defendant Ineligible*

Defendant first argues the doctrine of issue preclusion or collateral estoppel required finding at the section 1172.6 evidentiary hearing defendant did not participate in a robbery because the jury in Ornellas-Castro's trial acquitted Ornellas-Castro of robbery. Defendant frames the issue as "whether the jury's acquittal on the robbery charge

5

precluded the trial court [from] considering a post-conviction resentencing petition from finding beyond a reasonable doubt that the robbery occurred." We conclude it did not.

The trial court's ruling and the parties dispute centers on our Supreme Court's opinion in *Sparks*, *supra*, 48 Cal.4th 1. In *Sparks*, our Supreme Court concluded, "[A] verdict regarding one defendant has no effect on the trial of a different defendant. Courts should determine the propriety of a prosecution based on that prosecution's own record, not a different record. Nonmutual collateral estoppel does not apply to verdicts in criminal cases." (*Id*. at p. 5.) The court explained finding otherwise would "have the unfortunate effect of making collateral estoppel's application turn on the happenstance of which trial goes first," which "would mean that, of two participants in an alleged criminal enterprise, the one tried first would have only one trial in which to prevail—that participant's own trial; but the participant scheduled to be tried second might have two trials in which to prevail—either the first or the second trial. If, instead, both participants were tried together, neither could benefit from an inconsistent verdict. [Citation.] Such a system would give the appearance of arbitrariness, not integrity." (*Id*. at p. 16, italics omitted.)

Further, nonmutual collateral estoppel would create a "one-way ratchet" that could permit coconspirators tried later to benefit from an earlier coconspirator's favorable verdict or choose trial for themselves if the verdict was unfavorable. (*Sparks*, *supra*, 48 Cal.4th at pp. 16-17.) "All defendants may thus receive the benefit of the most favorable verdict any jury might render (provided they time their trials correctly). Nothing in our jury system suggests such a scale-tipping is either compelled or beneficial." (*Id*. at p. 17.) Conversely, "occasional inconsistent verdicts do not undermine the integrity of the justice system." (*Id*. at p. 16.)

Defendant contends *Sparks* is inapplicable because "the issue is not of two competing jury verdicts. Rather, the issue is whether the trial court—in ruling on a resentencing petition, not presiding over a trial—could make the finding that the

6

prosecution proved beyond a reasonable doubt that the underlying felony of robbery occurred even where the jury found the actual killer not guilty of that robbery." But this framing ignores defendant's plea. It was defendant's own plea that convicted him of robbery. And a plea " 'admits every element of the crime charged' [citation] and 'is the "legal equivalent" of a "verdict" [citation] and is "tantamount" to a "finding." ' " (*People v. Wallace* (2004) 33 Cal.4th 738, 749.) Though *Sparks* dealt with jury verdicts, there is no language limiting its application to verdicts rendered only by juries. (See *People v. Price* (2017) 8 Cal.App.5th 409, 434-435 [applying *Sparks* when some codefendants entered plea agreements].) *Sparks* is therefore applicable because defendant's plea resulted in a guilty verdict, which consequently bars using Ornellas-Castro's acquittal to undermine defendant's robbery conviction. (*Sparks*, *supra*, 48 Cal.4th at p. 5 ["a verdict regarding one defendant has no effect on the trial of a different defendant"].)

Nothing in section 1172.6 creates an exception to *Sparks*. Defendant contends "his no contest plea to robbery cannot be used to demonstrate that he committed the underlying felony of robbery beyond a reasonable doubt." But defendant provides no authority indicating an exception to collateral estoppel or section 1172.6 applies that would permit resentencing the underlying felony to avoid an inconsistent verdict created by defendant's own plea (and testimony) to the underlying felony. (Cf. *People v. Burgess* (2023) 88 Cal.App.5th 592, 602, 606 [evaluating an underlying felony for sufficient evidence following a § 1172.6 hearing when there had been a clarification of the law for the felony, which excused collateral estoppel, and "the clarification of the law [was] highly relevant to a fact finder's determination of [the defendant's] guilt for murder"].)

Finding otherwise would also severely undermine *Sparks*'s policy considerations. Permitting Ornellas-Castro's acquittal to release defendant from his plea could motivate future defendants to take pleas before their codefendants go to trial to get the benefit of the bargain, but then allow them the possibility to avoid this bargain if the codefendant is

7

acquitted. And it could also create a perverse motivation to testify in a manner to benefit their codefendants and consequently themselves. This is a more extreme version of the "one-way ratchet" described and rejected in *Sparks*. (See *Sparks*, *supra*, 48 Cal.4th at pp. 16-17.)

We consequently conclude the trial court did not err in finding Ornellas-Castro's acquittal did not preclude denying defendant's section 1172.6 petition.

II

*The Trial Court's Factual Findings Are Supported By Substantial Evidence*

Defendant next argues the trial court's finding that he was a major participant who acted with reckless indifference to human life lacked substantial evidence. We disagree.

Section 1172.6 permits resentencing of defendants convicted of murder or manslaughter where malice was imputed based solely on participation in a crime. (§ 1172.6, subd. (a).) To deny defendant relief under section 1172.6 the trial court was required to find beyond a reasonable doubt defendant was the actual killer, had the intent to kill, or was both a major participant in the robbery and that he acted with reckless indifference to human life. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708.)

We review the trial court's finding for substantial evidence. (*People v. Njoku* (2023) 95 Cal.App.5th 27, 41-43.) Thus, we consider the entire record in a light favorable to the judgment to determine "whether the evidence is such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 932; see *People v. Clements* (2022) 75 Cal.App.5th 276, 298.) If the record reasonably justifies the trial court's findings, we must affirm the conviction. (*People v. Jennings* (2010) 50 Cal.4th 616, 639.)

There is no argument or evidence defendant was the actual killer or had the intent to kill so we review the trial court's finding for substantial evidence defendant was both a major participant in the robbery who also acted with reckless indifference to human life.

8

## A

### *Defendant Was A Major Participant*

Under our Supreme Court's opinion in *People v. Banks* (2015) 61 Cal.4th 788, 803, to determine whether a defendant was a major participant in a robbery, a court considers the following factors: (1) The defendant's role in planning the crime that led to the death; (2) the defendant's use, knowledge, or production of the weapons used in that crime; (3) the defendant's awareness of the dangerousness of the crime or of the violent tendencies of his, her, or their accomplice; (4) the defendant's presence at the scene of the killing, role in the death, and opportunity to prevent it; and (5) the defendant's actions after lethal force was used. "[N]one of these considerations is dispositive. Rather, '[a]ll may be weighed in determining the ultimate question, whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major." ' " (*People v. Strong*, *supra*, 13 Cal.5th at p. 706.)

Defendant testified he and Ornellas-Castro intended to rob Phauthoum, and defendant testified he was instrumental in planning this robbery. Defendant was the point of contact with Phauthoum and had previously purchased drugs from him; Phauthoum consequently would not have been at the scene of his death but for defendant. Defendant also said he knew Ornellas-Castro had a gun and violent tendencies, stating defendant was personally scared of him because of rumors Ornellas-Castro shot someone at a supermarket, was a member of a gang, and could be "kinda crazy sometimes." Defendant was also at the scene of the crime, sitting immediately next to Phauthoum and in front of Ornellas-Castro. Though defendant testified he was "zoned out" while the two were talking, he still had the opportunity to intervene given the close proximity to and apparent ability to overhear his armed coconspirator and the target of their armed robbery sitting right next to him. After the killing, defendant immediately fled the scene of the crime and aided in the disposal of Phauthoum's cell phone and body, even selecting the

location because defendant had fished there.  Defendant planned to sell the cannabis taken from Phauthoum.  This collectively is substantial evidence supporting all factors for defendant being a major participant in the underlying homicidal robbery.

Defendant argues there was evidence he and Ornellas-Castro did not intend to rob Phauthoum.  Defendant relies on his testimony during cross-examination at Ornellas-Castro's trial indicating uncertainty the two defendants intended to rob Phauthoum.  But this testimony conflicts with defendant's explicit testimony he and Ornellas-Castro intended "[t]o rob him," along with defendant's testimony to the underlying conversations and preparations to effectuate this robbery.  Again, from this collective evidence we must conclude there was substantial evidence defendant was a major participant in a robbery.

B

*Defendant Acted With Reckless Indifference To Human Life*

Under our Supreme Court's opinion in *People v. Clark* (2016) 63 Cal.4th 522, 618-623, to determine whether a defendant acted with reckless indifference to human life, the trial court considers the following factors:  (1) The defendant's knowledge that weapons would be used; (2) the defendant's presence at the scene and ability to prevent the death or help the victim; (3) whether the defendant restrained the victim for a prolonged period; and (4) the defendant's knowledge of his, her, or their accomplice's violent tendencies.  This analysis has " 'significant[] overlap' " with the major participant analysis because " 'in general, for the greater the defendant's participation in the felony murder, the more likely that he[, she, or they] acted with reckless indifference to human life.' " (*Id*. at pp. 614-615.)

As with the major participant analysis, there is evidence defendant knew Ornellas-Castro had violent tendencies and was armed for the robbery.  Defendant testified to Ornellas-Castro's gang involvement, possible shooting at a supermarket, and that the two exchanged texts about robbing another person of his guns.  The robbery

10

underlying the murder was of a drug dealer defendant knew was a member of a gang he was told not to mess with, and the gun played an important role in the robbery as the source of force. Even though there was no evidence defendant restrained the victim for any amount of time, defendant was in close proximity to the victim and the shooter, giving him a potential opportunity to prevent the shooting.

On transfer, defendant contends our Supreme Court's opinion in *Emanuel*, *supra*, 17 Cal.5th 867 establishes "the evidence was insufficient to support that [defendant] acted with reckless indifference to human life"; we disagree. (Capitalization and boldface omitted.) *Emanuel* has some similarities with the current case in that the victim was shot during a drug deal. (*Id*. at pp. 877-878.) But in *Emanuel*, there was no "evidence [the defendant] planned a robbery involving the use of weapons," no "evidence [the defendant] knew [the coconspirator] had a propensity for violence" (*id*. at p. 887), no evidence the defendant even knew the coconspirator was armed (*id*. at p. 885), and when the victim refused to give the drugs to the defendant and his coconspirator, the defendant said, "[L]et's go" (*id*. at pp. 878-879). Evidence demonstrated the coconspirator hit the victim in the head with a gun, then went to shoot him in the leg but the victim hit the gun and the coconspirator shot the victim in the neck, killing him. (*Ibid*.)

Applying the reckless indifference standard, our Supreme Court found a lack of substantial evidence in *Emanuel*. (*Emanuel*, *supra*, 17 Cal.5th at pp. 885-896.) For the first factor, the court found there was no evidence the defendant used or was aware of weapons or his coconspirator's likelihood for killing. (*Id*. at p. 885.) In defendant's case, this factor, as discussed above, weighs in favor of finding reckless indifference given defendant's knowledge of the weapon, agreement to use it in the robbery, and awareness of Ornellas-Castro's gang membership and past history of violence.

For the second factor, our Supreme Court found the duration of the crime limited, not more than 14 minutes, so this factor was neutral. (*Emanuel*, *supra*, 17 Cal.5th at

11

p. 886.)  This is comparable to the present case, with the crime happening in a relatively short timeframe.

For the third factor, our Supreme Court found the defendant in *Emanuel* made efforts to minimize the risk of violence because there was no evidence there was a planned robbery involving weapons and the robbery occurred in a public park in the middle of the afternoon, so "the objective risk of violence posed by the crime and reasonably anticipated by the perpetrator [was] far less grave." (*Emanuel*, *supra*, 17 Cal.5th at p. 889.)  In contrast, the crime here involved an armed gang member robbing another gang member at night in a darkened car, exhibiting a meaningfully heightened risk of violence compared to *Emanuel*.  Defendant also told Ornellas-Castro to sit in the backseat in case Phauthoum resisted, increasing the risk of violence.

For the fourth factor, physical presence and opportunity to restrain the coconspirator or aid the victim, our Supreme Court found the defendant advocated they leave the scene when confronted with the victim's resistance.  (*Emanuel*, *supra*, 17 Cal.5th at p. 891.)  Further, the court found that though the defendant fled, this was not necessarily indicative of a reckless indifference to human life as opposed to simply avoiding arrest.  (*Id*. at p. 893.)  We do find this comparable to the present circumstance, where defendant certainly could have done more to restrain Ornellas-Castro and aid Phauthoum, especially given that Phauthoum was sitting right next to him.  But, like *Emanuel*, the shooting happened quickly and defendant's acts after the shooting do not necessarily exemplify a reckless indifference during the shooting, as opposed to a desire to escape culpability after the fact.

In viewing the totality of the circumstances, our Supreme Court in *Emanuel* concluded there was not substantial evidence of a reckless indifference to human life because:  "[T]he evidence shows [the defendant] set out to commit a robbery in a public place in the middle of the afternoon.  He was not armed, and the trial court found he did not know [the coconspirator] was armed or likely to use lethal force.  Accordingly, there

12

was nothing in the plan that 'elevated the risk to human life beyond those risks inherent in any armed robbery,' much less a planned unarmed robbery. ([*People v.*] *Clark*, *supra*, 63 Cal.4th at p. 623.) The crime unfolded without a prolonged period of restraint. When met with unexpected resistance, [the defendant] told [the coconspirator], 'let's go,' and began to walk away. This tends to show that [the defendant] was unwilling to engage in further violence to accomplish the aims of the robbery." (*Emanuel*, *supra*, 17 Cal.5th at pp. 895-896.)

Conversely, here, substantial evidence shows defendant actively orchestrated an armed robbery of someone associated with a gang by a member of another gang who was potentially violent, using a firearm in a car at night. There was also no evidence indicating defendant attempted to lessen the risk to life. Collectively, unlike in *Emanuel*, this evidence exhibits a risk beyond that inherent in a generic armed robbery. (See *People v. Clark*, *supra*, 63 Cal.4th at p. 623 ["But here there appears to be nothing in the plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery"].) And instead supports finding "defendant knowingly *create*[*d*] a serious *risk* of death." (*In re Taylor* (2019) 34 Cal.App.5th 543, 560.)

We therefore conclude substantial evidence supported the trial court's finding.

III

*We Must Assume The Trial Court Considered Defendant's Youth*

We granted defendant's request for supplemental briefing based on *People v. Jimenez* (2024) 103 Cal.App.5th 994. Defendant argues courts must consider youthful factors in considering whether the defendant was a major participant who acted with reckless indifference to human life, which is an evolving issue clearly established only after defendant's hearing, and there is no evidence the trial court considered this issue. We disagree.

The relevant line of cases begins with *People v. Harris* (2021) 60 Cal.App.5th 939, filed February 16, 2021. In *Harris*, the appellate court reversed the trial court's denial of

13

a section 1172.6 petition at the prima facie stage for a defendant who had been arrested for his offense when he was 17 years old. (*Harris*, at pp. 944-945.) The court concluded the defendant was not ineligible for relief as a matter of law under *Banks* and *Clark* because, in part, given the defendant's "youth at the time of the crime, particularly in light of subsequent case law's recognition of the science relating to adolescent brain development [citations], it is far from clear that [the defendant] was actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants.' " (*Harris*, at pp. 959-960; see *id*. at pp. 944-945, 948-949.)

In *In re Moore* (2021) 68 Cal.App.5th 434, 439, filed August 21, 2021, the appellate court had denied a writ of habeas corpus petition, from a defendant who was 16 years old at the time of the offense, challenging a robbery-murder special-circumstance finding under *Banks*. Our Supreme Court ordered the appellate "court to consider 'whether [the defendant's] youth at the time of the offense should be one of the factors considered under' *Banks* and *Clark*." (*Moore*, at p. 439.) The appellate court answered the question in the affirmative, finding "a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life." (*Id*. at p. 454.) The appellate court concluded our Supreme Court has explained, "[I]n determining whether a defendant acted with reckless indifference to human life, we must 'consider the totality of the circumstances.' [Citation.] Thus, the factors identified in *Banks* and *Clark* are 'nonexclusive.' " (*Moore*, at p. 454.)

In *People v. Jones* (2022) 86 Cal.App.5th 1076, 1090-1091, filed December 23, 2022, the appellate court concluded substantial evidence supported the trial court's finding that the defendant, who was 20 years old at the time of the offense, was a major participant who acted with reckless indifference to human life under *Banks* and *Clark*. However, the appellate court reversed because "[t]he *Banks* and *Clark* factors are not exclusive. . . . [T]he totality of the circumstances necessarily includes the defendant's

14

youthful age, which the record does not indicate the court considered." (*Jones*, at p. 1091; see *id*. at p. 1093.)  The appellate court concluded the resentencing hearing had taken place on March 10, 2021, and "*Moore*—the case holding squarely that a defendant's youth is one relevant factor—was not issued until months later in August 2021." (*Jones*, at p. 1092.)  Even though the previous cases "were premised on scientific findings regarding adolescent brain development," and the defendant was not an adolescent at the time of the offense, the appellate court concluded "in the interest of justice," that "it is best for the trial court to have a meaningful opportunity to consider [the defendant's] youth as part of the totality of the circumstances germane to determining whether he was a major participant who acted with reckless indifference to human life." (*Id*. at pp. 1092-1093.)  The court consequently remanded for the trial court to make this determination.  (*Id*. at p. 1093.)

In *People v. Oliver* (2023) 90 Cal.App.5th 466, 476-477, 485, filed March 16, 2023, the trial court denied a section 1172.6 petition following an evidentiary hearing for a defendant who committed the crime when he was 23 years old because it found beyond a reasonable doubt the defendant was a major participant who acted with reckless indifference to human life.  The appellate court granted the defendant's request for supplemental briefing based on *Jones*.  (*Oliver*, at p. 485.)  After summarizing *Harris*, *Moore*, and *Jones*, the appellate court "acknowledge[d] the trajectory of the legislation and case law recognizing the psychological and neurological differences between youthful and adult offenders, which both lessen the culpability of the young and increase the likelihood of their rehabilitation." (*Oliver*, at pp. 486-488.)

In *People v. Pittman* (2023) 96 Cal.App.5th 400, 409, 413, 416, 419, filed October 13, 2023, the appellate court reversed a denial of a section 1172.6 petition after an evidentiary hearing for a defendant who committed second degree murder when he was 21 years old.  The court looked at felony-murder cases, such as *Oliver* and *Moore*, "to determine whether there [wa]s a reasonable possibility that the failure to consider [the

15

defendant's] youth impacted the trial court's decision," which " 'stress two areas': youthful offenders' 'relative impulsivity' and 'their vulnerability to peer pressure.' " (*Pittman*, at pp. 417-418.)  The court concluded there was such a possibility.  (*Id*. at p. 418.)  Thus, even though the defendant was 21 years old at the time, the court concluded remand was appropriate because:  "We do not find further factual distinctions between this case and the felony-murder cases sufficiently compelling to overcome 'the interest[s] of justice' served by remand."  (*Ibid*.)

Finally, in *People v. Jimenez*, *supra*, 103 Cal.App.5th 994, 999-1000, filed on July 22, 2024, the trial court denied a first resentencing petition under section 1172.6 in August 2021 and then a second petition in March 2023 at the prima facie stage, finding "there was no legal basis entitling [the defendant] to a second petition for resentencing." The appellate court reviewed the above case law in addition to statutory changes in the recent years providing ameliorative benefits to defendants who committed their offenses when they were under 26 years old.  (*Id*. at pp. 1001-1004.)  "Considering this evolving landscape, and applying de novo review," the appellate court "reject[ed] the People's contention that [the defendant's] second petition [wa]s barred by collateral estoppel."  (*Id*. at p. 1004.)  The court reasoned that even if the elements of collateral estoppel were met, the equitable exception barring its application if there was a subsequent change in law applied because of the evolution of considering youth based on the above cases.  (*Id*. at p. 1005.)  The appellate court also concluded the law of the case doctrine did not apply for similar reasons, based on "a significant intervening change in the law."  (*Id*. at pp. 1006-1007.)  Thus, the court stated, "[A]s in *Jones*, we conclude it is in the interest of justice to give the trial court a meaningful opportunity to consider [the defendant's] youth 'as part of the totality of the circumstances germane to determining' whether he acted with malice under current law."  (*Jimenez*, at p. 1008.)

Defendant contends the record is silent on whether the trial court considered his youth and we cannot assume the trial court did.  Defendant argues, "[T]rial courts [that]

16

presided over evidentiary hearings more recently did not have meaningful opportunities to consider young adult offenders' youth when determining culpability" because most of the relevant cases "were decided shortly before [defendant's] hearing and should be considered recent, unanticipated changes to the law." (Italics omitted; see *People v. Ochoa* (2020) 53 Cal.App.5th 841, 853 [finding remand appropriate where "the record is at the very least ambiguous as to whether the court understood its" sentencing discretion]; *People v. Panozo* (2021) 59 Cal.App.5th 825, 840 ["our record necessitates remand because it is, at the very least, ambiguous as to whether the trial court was aware of its statutory obligations"].)

Defendant's evidentiary hearing occurred on March 29, 2023, after *Harris*, *Moore*, *Jones*, and *Oliver*, but before *Pittman* and *Jimenez*. Most of these early cases did involve defendants under the age of 18 years old, and *Harris* relied in part on "the science relating to adolescent brain development." (*People v. Harris*, *supra*, 60 Cal.App.5th at p. 960.) But *Moore* stated its rule broadly as "a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life." (*In re Moore*, *supra*, 68 Cal.App.5th at p. 454.) There was no mention of adolescence limiting this analysis. And the court in *Jones* found *Moore* sufficiently broad to apply to that defendant's case, who was 20 years old at the time of the offense, to reverse and remand for the trial court to consider the defendant's "youth as part of the totality of the circumstances germane to determining whether he was a major participant who acted with reckless indifference to human life." (*People v. Jones*, *supra*, 86 Cal.App.5th at pp. 1092-1093.) Even if we were to accept defendant's premise that we cannot assume the trial court here was aware of *Jones* because it was filed "just three months" prior to the hearing, *Jones* relied on *Moore*, which was filed approximately 19 months before defendant's evidentiary hearing. (See *Jones*, at pp. 1079, 1092-1093; *Moore*, at p. 434.) Thus, at the time of defendant's evidentiary hearing there was established law that courts can consider youth in the *Banks* and *Clark* analysis, even for defendants over 18 years

old. This case is dissimilar for similar reasons from *Jimenez*, where the relevant hearing there was the first one that occurred in 2021. (*People v. Jimenez*, *supra*, 103 Cal.App.5th at p. 1005 ["The timing of the trial court's August 2021 ruling on [the defendant's] first petition is similar to that in *Jones*"].)

Defendant has failed to establish a basis for us not to apply the fundamental principle that trial courts are presumed to have applied the law "where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) We therefore must presume the trial court was aware it could consider defendant's youth when it found he was a major participant who acted with reckless indifference to human life.

DISPOSITION

The trial court's order denying defendant's petition for resentencing under section 1172.6 is affirmed.

/s/_____
ROBIE, J.

We concur:

/s/_____
EARL, P. J.

/s/_____
RENNER, J.

18